A08A2269. GRAMM v. CITY OF STOCKBRIDGE.
(676 SE2d 818)

BERNES, Judge.

The City of Stockbridge filed a petition for condemnation before a special master under OCGA § 22-2-100 et seq. and under OCGA § § 36-61-1 et seq. (the "Urban Redevelopment Law") to acquire certain property owned by Marilyn K. Gramm for use in the City's urban redevelopment plan. Following a hearing, the special master entered an award granting the City's petition and awarding Gramm $430,000 as the value of the condemned property. The superior court entered a judgment incorporating the special master's award, the City paid the amount awarded into the court's registry, and the funds were disbursed to Gramm. Gramm filed a timely appeal in the superior court, challenging only the amount of the award and seeking a jury trial on the issue.

Before trial, the City determined that it no longer needed Gramm's property for its plan. The City, therefore, voluntarily dismissed the condemnation action without prejudice, filed a quit-claim deed reconveying the property to Gramm, and filed a claim of lien seeking Gramm's repayment of the condemnation award. The City also demanded payment of interest at a rate of seven percent per annum.

Gramm filed a motion to set aside the City's dismissal of the condemnation action. The trial court denied Gramm's motion. We granted Gramm's application for interlocutory appeal to review the

---

trial court's decision. Because the City erred in unilaterally dismissing the action after the condemnation judgment had been entered and it had acquired title to the property, we must reverse.

In a condemnation proceeding under OCGA § 22-2-100 et seq., title to the property vests in the condemnor upon entry of the condemnation judgment and payment of the special master's award into the court. See OCGA §§ 22-2-110 (b), 22-2-111; *Orr v. Ga. Transmission Corp.*, 281 Ga. 754, 757 (642 SE2d 809) (2007); *Gatefield Corp. v. Gwinnett County*, 234 Ga. App. 621, 622 (2) (507 SE2d 164) (1998). "When an appeal is taken from a special master's award to a jury in the superior court pursuant to [OCGA § 22-2-112], the only issue for decision by the jury is the value of the subject property taken." *Taylor v. Taylor County*, 231 Ga. 209 (200 SE2d 887) (1973). If there has been no objection to the taking and the condemnation judgment has been entered, any subsequent challenge to non-value issues is barred by res judicata and the validity of the taking may not be relitigated. See also *Taylor*, 231 Ga. at 209; *Gatefield Corp.*, 234 Ga. App. at 622 (2); *Johnson v. Fulton County*, 103 Ga. App. 873, 878-879 (1) (121 SE2d 54) (1961). Significantly, OCGA § 22-2-107 (g) provides that "upon the payment of the amount awarded by the special master into the registry of the court, the award of the special master and the judgment of the court condemning the property or interest to the use of the condemning body shall be conclusive." Accordingly, after a condemnation judgment has been entered, "[t]he condemnor can[not] assent to the judgment adopting the master's findings, pay in its money and seek to take possession of the property, and then disown the very property it has paid for, and sought possession of" in the action. *Johnson*, 103 Ga. App. at 878-879 (1).

Bearing these principles in mind, we turn to the instant case. Title to Gramm's property vested in the City on January 19, 2006 upon the superior court's entry of the condemnation judgment and the payment of the award to Gramm. The City's title to the property was conclusive, and therefore, the City was without authority to unilaterally dismiss the condemnation action and demand return of the previously paid award. See *Gatefield Corp.*, 234 Ga. App. at 622 (2); *Housing Auth. &c. of Atlanta v. Mercer*, 123 Ga. App. 38 (179 SE2d 275) (1970). Although Gramm had filed an appeal seeking a jury trial as to the amount of the award, non-value issues regarding the validity of the taking were not presented and were barred from re-litigation under the principle of res judicata.[1] See *Taylor*, 231 Ga.

---

[1] Gramm's acceptance of payment under the award did not preclude her from appealing the amount of the award. See OCGA § 22-2-113 (a); *Tingle v. Ga. Power Co.*, 150 Ga. App. 867,

at 209; *Gatefield Corp.*, 234 Ga. App. at 622 (2); *Johnson*, 103 Ga. App. at 878-879 (1).

The City's reliance upon the provisions of OCGA §§ 22-1-2 (c) (1)[2] and 22-1-12[3] as authority for its actions is misplaced. These provisions were enacted as part of "The Landowner's Bill of Rights and Private Property Protection Act" and were intended to bestow property owners with certain rights in condemnation actions filed on or after the dates designated in the enactments. OCGA § 22-1-2 (c) (1) applies to condemnation actions filed on or after April 4, 2006 and OCGA § 22-1-12 applies to condemnation actions filed on or after February 9, 2006. See Ga. L. 2006, p. 39, §§ 1, 4, and 25. Because the instant condemnation action was filed in November 2005, prior to the effective dates of these statutes, the provisions do not apply here.

Nor is the City's belated dismissal of the condemnation action authorized by our holding in *Gatefield Corp.* In that case, the condemnor county sought and obtained a condemnation judgment against the wrong parcel of property as a result of its surveyor's misidentification of the land lot in the property survey. See *Gatefield Corp.*, 234 Ga. App. at 621. As a result of the mistake, the county filed a motion to set aside the judgment, dismiss its petition, and restore the property interests to the condemnee/former property owner. Id. The trial court granted the county's motion. On appeal, this Court ruled that the county had not established grounds for setting aside the judgment under OCGA § 9-11-60 (d) and could not simply dismiss its condemnation petition after the condemnation judgment had been entered. Id. at 621-623 (1), (2). Nevertheless, we concluded that it would be inimical to the public interest to compel the county to retain title to property under the unique circumstances

---

868, n. 1 (258 SE2d 668) (1979).

[2] OCGA § 22-1-2 (c) (1), which by its express terms is applicable only to the former property owners, provides, in pertinent part:

If property acquired through the power of eminent domain from an owner fails to be put to a public use within five years, the former property owner may apply to the condemnor or its successor or assign for reconveyance or quitclaim of the property to the former property owner or for additional compensation for such property.

[3] OCGA § 22-1-12 (2) provides as follows:

In all actions where a condemning authority exercises the power of eminent domain, the court having jurisdiction of a proceeding instituted by a condemnor to acquire real property by condemnation shall award the owner of any right or title to or interest in such real property such sum as will in the opinion of the court reimburse such owner for his or her reasonable costs and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if: . . . [t]he proceeding is abandoned by the condemning authority.

To the extent that the City argues that this statute implies that a condemnor may have a right to abandon a condemnation proceeding, we note that the statute is silent as to when and under what circumstances an abandonment may be authorized.

of the case. Id. at 623 (2). As a result, we affirmed the trial court's decision to set aside the condemnation judgment on the condition that the county be required to pay all expenses and damages incurred by the condemnee in the proceedings. Id.

But, *Gatefield Corp.* is factually inapposite to the case before us. In this case, the City made no mistake in identifying the property to be condemned. The City intentionally condemned the Gramm property, evicted the commercial tenant from the property, and retained possession of the property for over one year before deciding that it no longer needed the property for the urban redevelopment project. Moreover, in *Gatefield Corp.*, there is no indication that the award had been paid to the condemnee prior to the setting aside of the judgment or that the condemnee relied upon the payment to her detriment. In contrast, Gramm asserts that she used the award on other properties. Gramm also asserts that the mere payment of expenses would not make her whole because she has incurred additional damages arising from the condemnation.[4]

While under certain circumstances there may be policy reasons for allowing a condemnor to set aside a condemnation judgment, strong countervailing policy considerations may also exist. A property owner, such as Gramm, should not be required to retain funds paid pursuant to a condemnation award until such time as the condemnor determines whether it actually "needs" or can develop property it has already acquired. Such a requirement would be highly inequitable to the property owner and would cause prolonged uncertainty in condemnation actions. A property owner should be allowed to rely upon the condemnation as being final when, as in this case, the condemnor has obtained a condemnation judgment; the award has been paid and disbursed; the condemnee has filed no exceptions to the taking; and the condemnor has retained possession of the property for a significant period of time. See *Taylor*, 231 Ga. at 210; *Johnson*, 103 Ga. App. at 877-879 (1). Equity does not require the setting aside of the condemnation judgment under the circumstances presented in this case. Compare *Gatefield Corp.*, 234 Ga. App. at 623 (2).

Because the City's dismissal was not authorized, we reverse the trial court's decision. See *Housing Auth. of Atlanta*, 123 Ga. App. at 38.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 27, 2009 

---

[4] Gramm asserts that she has lost rental income and that the property has fallen into disrepair and is uninhabitable.

*Power & Cooper, Warren R. Power, Alex R. Roberson*, for appellant.

*Smith, Welch & Brittain, Andrew J. Welch, Jr., William A. White*, for appellee.