295 Ga. 515
FINAL COPY

S13G1582. DILLARD LAND INVESTMENTS, LLC v. FULTON COUNTY.

NAHMIAS, Justice.

We granted certiorari to decide whether a condemnor may voluntarily dismiss a condemnation action, without the consent of the court or the condemnee, after a special master has entered his award valuing the property at issue but before the condemnor has paid the amount of the award into the court registry or to the condemnee. We conclude that a condemnor is not entitled to voluntarily dismiss a condemnation action unilaterally once the special master renders his award, and we reverse the Court of Appeals' judgment to the contrary.

1. On January 18, 2012, the Fulton County Commission adopted a resolution declaring that the County needed more than 12 acres of land on Hollywood Road for the expansion of library facilities. The resolution said that negotiations to purchase the property from its owner, appellant Dillard Land Investments, LLC ("Dillard"), had thus far failed, and authorized the filing of a lawsuit using the "special master" method of condemnation to acquire the

property if the negotiations continued to falter. See Special Master Act of 1957, Ga. L. 1957, p. 387 (codified as amended at OCGA §§ 22-2-100 to 22-2-114).[1]

On February 24, 2012, the County filed a petition for condemnation, alleging that "all questions of necessity and public convenience with respect to said expansion and the necessity of acquiring the land herein described have been determined" by the County and that the County had "provided, appropriated and made available sufficient funds to pay the adequate and just compensation . . . that may be awarded by this Court."

On March 27, the trial court appointed a special master, and on April 27, Dillard filed an acknowledgment of service. After a May 10 hearing, which was not transcribed, the special master filed an award indicating that he had "heard evidence under oath, both oral and documentation [sic]," and finding that the actual market value of the property was $5,187,500. On May 15, Dillard filed its answer, defenses, and counterclaims to the County's condemnation petition.[2]

---

[1] The special master method is one of the three primary Georgia statutory procedures for condemning property. The other two are the much older "assessors" method, see Ga. L. 1894, p. 95 (codified as amended at OCGA §§ 22-2-1 to 22-2-86), which is discussed below, and the "declaration of taking" method, see Ga. L. 1961, p. 517 (codified as amended at OCGA §§ 32-3-4 to 32-3-20). See Windsor v. City of Atlanta, 287 Ga. 334, 334, n. 1 (695 SE2d 576) (2010).

[2] Dillard alleged that the County agreed to buy the property in June 2011 for a certain price but then breached the agreement and instituted the condemnation action to acquire the property for

2

On May 16, the trial court entered a judgment declaring that the property was "necessary for the functioning of [the County] and is for a public use"; vesting title to the property in the County upon its payment of the $5,187,500 award into the court registry; and directing the County and Dillard to evenly split the special master's fees and costs.

The County did not pay the award into the registry. Instead, on May 18, the County filed a voluntary dismissal of the condemnation action. See OCGA § 9-11-41 (a).[3] On June 12, Dillard filed a motion to vacate the County's

---

a lower amount. Dillard sought a judgment for just and adequate compensation plus damages "for abuse and misuse of eminent domain powers, breach of contract and bad faith, including an award of attorneys fees and expenses of litigation."

[3] OCGA § 9-11-41 (a) says:
(a)      **Voluntary dismissal; effect:**
　　　(1) **By plaintiff; by stipulation**. Subject to the provisions of subsection (e) of Code Section 9-11-23, Code Section 9-11-66, and any statute, an action may be dismissed by the plaintiff, without order or permission of court:
　　　　　(A)　By filing a written notice of dismissal at any time before the first witness is sworn; or
　　　　　(B)　By filing a stipulation of dismissal signed by all parties who have appeared in the action.
　　　(2) **By order of court**. Except as provided in paragraph (1) of this subsection, an action shall not be dismissed upon the plaintiff's motion except upon order of the court and upon the terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him or her of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.
　　　(3) **Effect**. A dismissal under this subsection is without prejudice, except that the filing of a second notice of dismissal operates as an adjudication upon the merits.
. . .

3

voluntary dismissal, and on June 15, the County filed a motion to vacate the court's judgment on the special master's award. After a July 17 hearing, the trial court issued an order on August 14 granting Dillard's motion on the ground that the County could not voluntarily dismiss the action without the consent of the court or the condemnee once the special master entered his value award. Also on August14, the court issued an order denying the County's motion on the ground that the court's entry of a judgment on the award was premature but not void. This order abrogated the prior judgment, authorized the parties to file any non-value objections to the award within 13 days after service of the order, and indicated that the court would thereafter enter a new judgment. Both August 14 orders included a finding that neither party had filed an appeal for a jury trial under OCGA § 22-2-112 (a) to dispute the amount of the award and that the time to file such an appeal had expired. On August 23, 2012, the trial court issued a certificate of immediate review.

The Court of Appeals then granted the County's application for an interlocutory appeal and reversed. See Fulton County v. Dillard Land Investments, LLC, 322 Ga. App. 344 (744 SE2d 880) (2013). The Court of Appeals began its analysis by focusing on OCGA § 22-1-12, a statute enacted

4

in 2006 as part of the Landowner's Bill of Rights and Private Property Protection Act, Ga. L. 2006, p. 39, which entitles property owners to recover their attorney fees and other expenses when a condemnor abandons a condemnation action.[4]  See Dillard, 322 Ga. App. at 345.  The court then examined the only prior reported decision citing OCGA § 22-1-12, Gramm v. City of Stockbridge, 297 Ga. App. 165 (676 SE2d 818) (2009).[5]  The court recognized that the condemnation action in Gramm was filed prior to the effective date of OCGA § 22-1-12, making that statute inapplicable to that case,

---

[4]  OCGA § 22-1-12 says:

In all actions where a condemning authority exercises the power of eminent domain, the court having jurisdiction of a proceeding instituted by a condemnor to acquire real property by condemnation shall award the owner of any right or title to or interest in such real property such sum as will in the opinion of the court reimburse such owner for his or her reasonable costs and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if:

(1) The final judgment is that the condemning authority cannot acquire the real property by condemnation; or

(2) The proceeding is abandoned by the condemning authority.

[5]  In Gramm, the special master filed his award, the trial court entered judgment on the award, the condemnor deposited the award into the registry, and the funds were disbursed.  See 297 Ga. App. at 165.  The condemnee filed a timely appeal for a jury trial on value, see OCGA § 22-2-112 (a), but before trial the condemnor determined that it no longer needed the property and filed a notice of voluntary dismissal.  See 297 Ga. App. at 165.  The condemnee filed a motion to set aside the voluntary dismissal, which the trial court denied, but the Court of Appeals reversed on the ground that title to the property vested in the condemnor upon entry of the court's judgment and payment of the special master's award, see OCGA §§ 22-2-107 (g), 22-2-110 (b), 22-2-111, precluding the condemnor from voluntarily dismissing the action.  See Gramm, 297 Ga. App. at 166.

5

but nevertheless found the decision in Gramm "instructive" for this case. Dillard, 322 Ga. App. at 346, n. 4. Noting that, unlike the condemnor in Gramm, Fulton County did not pay the special master's award or take title to the land for any period of time, and filed its voluntary dismissal only two days after the premature entry of the trial court's judgment, the Court of Appeals held that "[u]nder these circumstances, the trial court erred by concluding that Fulton County could not dismiss its condemnation action" unilaterally. Dillard, 322 Ga. App. at 347. Finally, the court rebuffed the cases Dillard cited as "inapposite," since those cases were "decided under the assessor's [sic] method of condemnation, and they all preceded OCGA § 22-1-12," adding that "assessors' rulings on condemnation cases [are] self-executing" whereas "the legislature required that special masters' awards be adopted by the trial judge." Dillard, 322 Ga. App. at 347.

We granted Dillard's petition for a writ of certiorari.

2. (a) It has long been established that a condemnor may not voluntarily dismiss a condemnation action unilaterally after the assessors have made their award as to the value of the property at issue, that is, the amount of just compensation that the condemnor must pay the property owner for taking

6

the property. See, e.g., <u>Thomas v. Central of Ga. R. Co.</u>, 169 Ga. 269, 270 (149 SE 884) (1929); <u>Housing Auth. of City of Atlanta v. Mercer</u>, 123 Ga. App. 38, 43-44 (179 SE2d 275) (1970) (citing additional cases). The County argues, and the Court of Appeals held, that this principle does not apply to this case because the special master method of condemnation differs from the assessors method in that the condemnation action does not end with the special master's filing of his award determining the amount of compensation due to the condemnee, since OCGA § 22-2-111 requires the superior court to enter a judgment on the award after addressing any non-value objections.[6]

It is true that OCGA § 22-2-111 requires the court in all special master condemnation cases to enter a formal judgment condemning the property to the condemnor's use, something that is required for an assessors' award only if

---

[6] OCGA § 22-2-111 says:
> Upon the entry of the award of the special master or the special master panel, if such a panel exists, and the presentation of the award to the judge of the superior court, the judge shall enter a proper order and judgment of the court condemning the described property or other interest in rem to the use of the condemnor upon the condemnor's paying into the registry of the court the amount provided in the award.

By contrast, where no appeal to the superior court is filed in an assessors method case, the court does not enter a judgment on the assessors' award; instead, within ten days, the award is "filed and recorded in the office of the clerk of the superior court of the county where the property . . . is situated." OCGA § 22-2-65. The assessors' award is nevertheless treated as a "judgment rendered by a tribunal which is competent to fix the rights and liabilities of the parties to the proceedings with reference to the matters and things involved." <u>Thomas</u>, 169 Ga. at 271.

7

there is an appeal to the court either to hold a jury trial on value or to issue a ruling on any non-value questions of law that the assessors did not refer to the court before entering their award. See OCGA § 22-2-40 (c); Thomas, 169 Ga. at 272.[7] Whether rendered by assessors or by a special master, however, the award determining the value of the property has the same dispositive effect on that fundamental issue in the condemnation action. Under both methods, the value award can be changed only by a jury, if either party files a timely and proper appeal for a de novo jury determination of value. See OCGA §§ 22-2-82 (assessors method), 22-2-113 (c) (special master method). The court has no

---

[7] OCGA § 22-2-40 says:

> (a) The condemnor and the condemnee shall each select an assessor, and the two assessors so selected shall select a third assessor. No person shall be selected as an assessor unless such person is a real estate appraiser . . . .
> (b) The assessors . . . shall have no authority to decide questions of law including, but not limited to, issues of compensability.
> (c) The assessors . . . shall have the authority to refer questions of law to the appropriate superior court prior to entering an award. Neither party shall be prohibited from appealing a question of law to the superior court after the entry of the assessor's award.

Thus, assessors, who are real estate appraisers, are prohibited from deciding questions of law, while special masters are competent attorneys appointed by the court who are authorized to decide legal questions in the first instance. See OCGA § 22-2-103 ("The special master . . . shall be appointed by the judge or judges of the superior courts of each judicial circuit and shall discharge the duties provided for in this article. . . . The special master so appointed must be a competent attorney at law, be of good standing in his profession, and have at least three years' experience in the practice of law. His relation and accountability to the court shall be that of an auditor or master in the general practice existing in this state. . . ."); City of Atlanta v. Heirs of Champion, 244 Ga. 620, 622 (261 SE2d 343) (1979).

discretion to change the value awarded under either method. If there are no non-value legal objections, the court takes no action as to an assessors' award or simply makes a special master's award the judgment of the court. See OCGA § 22-2-111 ("Upon the entry of the award of the special master . . . and the presentation of the award to the judge of the superior court, the judge shall enter a proper order and judgment of the court condemning the described property . . . upon the condemnor's paying into the registry of the court the amount provided in the award."). Moreover, the Special Master Act does not purport to affect the operation of the voluntary dismissal rule of the Civil Practice Act, OCGA § 9-11-41 (a) (1).

(b)     Since the original enactment of the Civil Practice Act and OCGA § 9-11-41 (a) in 1966, this Court has repeatedly held that

> the plaintiff's right to dismiss can not be exercised after a verdict[,] or a finding by the judge[,] which is equivalent thereto[,] has been reached . . . . The principle at the foundation of these decisions is that, after a party has taken the chances of litigation[,] and knows what is the actual result reached in the suit by the tribunal which is to pass upon it, he can not, by exercising his right of voluntary dismissal, deprive the opposite party of the victory thus gained.

Cooper v. Rosser, 233 Ga. 388, 388-389 (211 SE2d 303) (1974) (quoting Peoples Bank of Talbotton v. Exchange Bank of Macon, 119 Ga. 366, 368 (46

9

SE 416) (1904)).[8] See, e.g., <u>Wall v. Thurman</u>, 283 Ga. 533, 533 (661 SE2d 549) (2008) ("In numerous cases, we have held that, under our voluntary dismissal statute, OCGA § 9-11-41 (a), a trial court's announcement of its decision on the merits of the case precludes a voluntary dismissal."); <u>Lakes v. Marriott Corp.</u>, 264 Ga. 475, 476-477 (448 SE2d 203)(1994) (explaining that, "in addition to the express limits in OCGA § 9-11-41 (a) regarding the timing of dismissal and regarding cases in which a counterclaim has been asserted," the right to voluntarily dismiss a case unilaterally has always been subject to a prohibition on its exercise, "even prior to trial, where there has already been an announcement by the court of its intention to rule in favor of the defendant" (citation and footnote omitted)).[9]

---

[8] We generally had held the same for more than a century before the Civil Practice Act was enacted, see, e.g., <u>Merchants' Bank of Macon v. Rawls</u>, 7 Ga. 191, 200 (1849), although there were a few rulings to the contrary, see, e.g., <u>Macon, Dublin & Savannah R. Co. v. Leslie</u>, 148 Ga. 524, 524 (97 SE 438) (1918) ("It is not error to permit a plaintiff to dismiss his case after the trial judge has announced in open court the direction of a verdict for the defendant, and while the verdict directed is being written, but before it is actually signed."). The contrary cases were formally overruled or disapproved in <u>Jones v. Burton</u>, 238 Ga. 394 (233 SE2d 367) (1977), which reiterated that a plaintiff could not voluntarily dismiss its case unilaterally "after [it] had ascertained the factual result reached by the fact-finder," even if the verdict or judgment had not yet been formally entered. Id. at 396.

[9] As mentioned in footnote 2 above, Dillard filed counterclaims to the County's petition before the County filed its notice of voluntary dismissal, to which Dillard formally objected. OCGA § 9-11-41 (a) (2) provides that, "[i]f a counterclaim has been pleaded by a defendant prior to the service upon him or her of the plaintiff's motion to dismiss, the action shall not be dismissed against

10

Under these precedents, it is the plaintiff's knowledge of the "actual, as opposed to possible, conclusion of the litigation [that] precludes filing a voluntary dismissal." Leary v. Julian, 225 Ga. App. 472, 473 (484 SE2d 75) (1997). But that does not require the finding, judgment, or decision to have been memorialized or filed in a written order; the oral announcement of a dispositive ruling in open court, for example, ends the time for filing a unilateral voluntary dismissal. See id. at 474 (holding that the parties' announcement of their settlement in open court, which the court adopted in an oral ruling, precluded a subsequent voluntary dismissal). See also Kilby v. Keener, 249 Ga. 667, 668 (293 SE2d 318) (1982) ("This principle also has been applied to attempts to dismiss made by plaintiffs between the time when the court announces judgment and the time judgment actually is entered. The principle we apply in this case is not new." (citation omitted)). Importantly, the principle applies even if the decision is on the merits of only one of the claims involved in the case. See, e.g., Groves v. Groves, 250 Ga. 459, 460 (298 SE2d 506)

the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court." See Avnet, Inc. v. Wyle Labs., Inc., 265 Ga. 716, 718 (461 SE2d 865) (1995) (discussing this provision). Because we conclude that the County was not authorized to unilaterally dismiss this case under OCGA § 9-11-41 (a) (1) following the special master's award, we need not decide whether any of Dillard's counterclaims also might have precluded a unilateral dismissal.

11

(1983) (declining to recognize a voluntary dismissal filed in a divorce and custody action after the announcement by the trial court of its decision regarding temporary child custody); Guillebeau v. Yeargin, 254 Ga. 490, 492 (330 SE2d 585) (1985) (holding that the award of summary judgment to one of three defendants was a ruling on the merits of the case that cut off the plaintiff's right to voluntarily dismiss unilaterally).  See also Moore v. Moore, 253 Ga. 211, 212 (317 SE2d 529) (1984) (holding that a plaintiff who obtains partial summary judgment in her favor "cannot then dismiss the complaint so as to deprive the court of jurisdiction over issues preserved by the order granting partial summary judgment").

The holdings in Groves and Guillebeau were criticized.  See Groves, 250 Ga. at 460-461 (Gregory, J., dissenting); Guillebeau, 254 Ga. at 493 (Gregory, J., dissenting).  But the principle supporting those holdings is sensible and has been applied consistently by this Court since the enactment of the Civil Practice Act nearly a half-century ago, and the General Assembly has not seen fit to abrogate those precedents, even when repeatedly amending OCGA § 9-11-41 (a) to advance the deadline for a unilateral voluntary dismissal without a prior merits announcement.  Compare Ga. L. 1966, p. 609, § 41 (a) (allowing

12

voluntary dismissal "at any time before verdict"), with Ga. L. 1985, p. 546, § 1 (amending the rule to make the deadline "the submission of the case to the jury"), Ga. L. 1986, p. 816, § 1 (amending the rule to make the deadline when "the plaintiff rests his case"), and Ga. L. 2003, p. 820, § 4 (amending the rule to make the deadline when "the first witness is sworn"). We therefore adhere to our precedents.

The principle expressed in our general voluntary dismissal cases accords with and undergirds the cases refusing to allow the unilateral voluntary dismissal of a condemnation action after the assessors have rendered their value decision as the factfinders in the action. See, e.g., Thomas, 169 Ga. at 272; Mercer, 123 Ga. App. at 42. And the principle applies with equal force to condemnation actions under the special master method, once the special master has rendered his value decision as the factfinder in the action — a decision on the merits of the case that the superior court has no discretion to alter. See OCGA § 22-2-111. The plaintiff condemnor may voluntarily dismiss its action without the agreement of the condemnee or the permission of the court before the special master announces his value award, even if the result appears preordained from what happened at the valuation hearing or from other

13

developments in the case. See Lakes, 264 Ga. at 478. After the special master has announced his award, the condemnor may appeal for a de novo jury trial on value or file non-value objections in the superior court — neither of which the County did here. What the condemnor may *not* do, once it knows how the key issue in its case will be resolved — the value the special master, and necessarily then the court, will place on the property being condemned — is to "'deprive the opposite party of the victory thus gained'" by voluntarily dismissing the action unilaterally and without prejudice, allowing the condemnor to re-litigate the same issue in a newly filed action in hopes of a better result. See Cooper, 233 Ga. at 389 (citation omitted).

The County contends that the special master's award is not final or enforceable at the time it is announced, and that the property is not deemed "taken," with title vesting in the condemnor, until the condemnor pays the award to the condemnee or into the court registry. See Orr v. Ga. Transmission Corp., 281 Ga. 754, 757 (642 SE2d 809) (2007). But enforceability of the value award is not the question presented. The relevant question is when a plaintiff is entitled to dismiss the action without the approval of the court and over the objection of the opposing party. And the answer to that question, our precedents

14

demonstrate, is before an actual finding, decision, or judgment on the merits of the action becomes known to the plaintiff, not when the ruling becomes enforceable by the defendant. After all, when a court orally announces its summary judgment decision, that ruling is not yet final or enforceable, but a plaintiff nevertheless cannot thereafter voluntarily dismiss his action unilaterally, see Guillebeau, 254 Ga. at 491-492 — and a special master's value award is more binding on the court than its own oral announcement of how it expects to rule. See OCGA § 22-2-111.

(c) The Court of Appeals erred in deeming the assessors' cases inapposite and relying instead on OCGA § 22-1-12. As noted previously, the precedents involving voluntary dismissal after assessors' awards in condemnation cases accord with the precedents on voluntary dismissal in general, and the principle expressed in those cases applies equally to voluntary dismissal after a special master award. OCGA § 22-1-12 does nothing to change that principle; indeed, it would be surprising if OCGA § 22-1-12 did so, since it was enacted as part of the 2006 "Landowner's Bill of Rights and Private Property Protection Act," which expanded property owners' protections against condemnation rather than limiting those safeguards. See Gramm, 297 Ga. App.

15

at 167.

The new statute says nothing about *when* condemnors may abandon a condemnation proceeding.  See id.  The General Assembly did not shorten or lengthen the *time* for a condemnor to file a voluntary dismissal, which remains governed by OCGA § 9-11-41 and this Court's precedents.  What the General Assembly did with OCGA § 22-1-12 is to reallocate the *costs* imposed on the condemnor and the condemnee if the condemnor abandons a condemnation action *at any point*.  If entitled to voluntarily dismiss unilaterally and without prejudice, plaintiffs, including condemnors, generally may do so even if the dismissal is alleged to be in bad faith and causes "inconvenience and irritation to the defendant."   Lakes, 264 Ga. at 476.  But unlike most plaintiffs, condemnors that abandon their actions must now pay the property owner's reasonable costs and expenses actually incurred because of the condemnation proceedings, including attorney, appraisal, and engineering fees.  See OCGA § 22-1-12.

Moreover, Gramm is fully consistent with our decision today. It is clearly too late for a condemnor to voluntarily dismiss its action unilaterally *after* "the condemnor has obtained a condemnation judgment; the award has been paid and

16

disbursed; the condemnee has filed no exceptions to the taking; and the condemnor has retained possession of the property for a significant period of time." 297 Ga. App. at 168. But it does not follow that voluntary dismissal is allowed at any point *before* all of those events occur, as the Court of Appeals indicated in this case. Instead, our precedents establish that the relevant event is when the condemnor knows what the value award will be, and that event occurred in this case before the County moved to dismiss its action. Once the special master announces his award, if the condemnor believes that the value placed on the property is too high, the only remedy is to appeal the award for a de novo jury determination of value under OCGA § 22-2-112, a remedy that the County did not pursue in this case.

(d)     Finally, we address the County's contention that it is "absurd" to limit the condemnor's time to abandon an action brought under the special master method to the period before the special master renders his award, which in this case was six weeks after the County filed its action. The County, however, decided when it was ready to seek condemnation of the property at issue, and it also decided to use the special master method, knowing that such a proceeding is required to move quickly. See OCGA §§ 22-2-101 (special

17

master method is designed to be "quick"), 22-2-102 (same), 22-2-102.1 (same), 22-2-107 (g) ("The purpose of this [special master method is] to quicken and simplify the condemnation proceeding . . . ."). There is nothing "absurd" about requiring the County to live with the consequences of those litigation decisions, as other plaintiffs in civil actions do, after a dispositive ruling on value was announced in the defendant's favor.

Judgment reversed. All the Justices concur.

Decided July 11, 2014.

Certiorari to the Court of Appeals of Georgia – 322 Ga. App. 344.

Pursley Friese Torgrimson, Charles N. Pursley, Jr., Christian F. Torgrimson, Angela D. Robinson, Elizabeth R. Story, Maddox, Nix, Bowman & Zoeckler, Thomas A. Bowman, Wendell K. Willard, for appellant.
Robert D. Ware, Diana L. Freeman, Larry W. Ramsey, Jr., Kaye W. Burwell, for appellee.
Baker, Donelson, Bearman & Caldwell, Charles L. Ruffin, amicus curiae.

18