**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A1280. FINCHER ROAD INVESTMENTS, LLLP v. CITY OF
       CANTON, GEORGIA.

DILLARD, Judge.

Fincher Road Investments, LLLP ("Fincher Road") appeals the trial court's

order on pre-trial issues in a case arising from a condemnation action brought against

it by the City of Canton ("the City"). Following protracted litigation between the

parties (including a prior appeal to this Court),[1] the City sought to dismiss its

condemnation action. Fincher Road appeals the trial court's ruling that it is only

entitled to attorney fees and costs of litigation but no compensation for any taking of

the property. We agree that the trial court erred and, for the reasons set forth *infra*, we

affirm in part and reverse in part.

---

[1] *See Fincher Road Invs., LLLP v. City of Canton*, 314 Ga. App. 852 (726 SE2d
120) (2012).

The record reflects that on October 11, 2010, the City filed a petition for condemnation and declaration of taking with respect to property owned by Fincher Road.[2] The City deposited $787,400 with the trial court, which it estimated to be just and adequate compensation for the property. On October 25, 2010, the court issued an order and judgment upon the petition, declaring that title had vested in the City and that the City had the right of possession as to the property. On November 22, 2010, Fincher Road filed a notice of appeal to the court's order as to the value of the condemned property. That same day, Fincher Road also filed a petition to set aside the declaration of taking, contending that the declaration was improper for a number of reasons.

At a hearing convened on December 7, 2010, and later in a written February 28, 2011 order, the trial court denied and dismissed Fincher Road's petition to set aside the declaration of taking based upon a failure to give the City 15 days' notice prior to the scheduled hearing. This Court then granted Fincher Road's application for interlocutory appeal of that dismissal. In that appeal, we determined that a superior court has "the discretion to hold a hearing and consider the merits of the petition if the rule nisi was not issued and served upon the condemnor a full 15 days

---

[2] The City also filed petitions against others who are not parties to this appeal.

before the hearing."[3] As a result, we remanded the case to the trial court to consider whether, "in the exercise of its discretion and considering the attendant circumstances . . . , [Fincher Road] should be afforded an opportunity for a hearing and a decision on the merits of [its] petition[ ] to set aside the declaration of taking."[4]

A remittitur was issued to the trial court on April 12, 2012. On that same day, the City filed with the trial court a motion to set aside the order on the petition for condemnation, asserting that it had determined condemnation of the property was "no longer necessary for public use." The City also concurrently filed a notice of dismissal as to its condemnation action, relinquishing all rights to the property. In its motion to set aside the condemnation judgment, the City asked that the court have the clerk disburse to it the previously deposited funds. Fincher Road filed a motion in opposition, contending that it was entitled to compensation for the City's temporary taking of its property prior to dismissal. Thus, Fincher Road opposed the City's request for disbursement of funds. Fincher Road also filed a motion for attorney fees and costs of litigation.

---

[3] *Fincher Road Invs.*, 314 Ga. App. at 853.

[4] *Id.*

3

In an order on pre-trial issues, the trial court determined that Fincher Road was entitled to attorney fees and costs of litigation under OCGA § 22-1-12 but was not entitled to any other compensation. Thereafter, the court ordered that the case proceed to trial solely to determine the amount of attorney fees and costs of litigation. This Court granted Fincher Road's application for interlocutory appeal, which we will now consider.

Our analysis necessarily begins with the Takings Clause of the Fifth Amendment to the United States Constitution, which provides that private property shall not "be taken for public use, without just compensation."[5] Suffice it to say, private property rights are among "the most basic of human rights,"[6] and it is the

---

[5] U.S. CONST. amend. V; *see also* GA. CONST. Art. 1, Sec. 3, Para. I (a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."); *Horne v. Dep't of Agric.*, ___ U.S. ___, ___ (II) (A) (1) (135 SCt 2419, 192 LE2d 388) (2015) ("The principle reflected in the [Takings] Clause goes back at least 800 years to the Magna Carta . . . ."); Letter from William Pierce to St. George Tucker (Sept. 28, 1787), GAZETTE OF THE STATE OF GA., Mar. 20, 1788, *excerpted in* THURSTON GREENE, THE LANGUAGE OF THE CONSTITUTION 614 (1991) ("I conceive civil liberty is sufficiently guarded when personal security, personal liberty, and *private property*, are made the peculiar care of government.").

[6] William K. Lane III, *"Your Raisins or Your Life": The Harrowing of the Takings Clause in Horne v. U.S. Department of Agriculture, 750 F.3d 1128 (9th Cir. 2014)*, 38 HARV. J. LAW & PUB.POL'Y 761, 761 (2015) (quoting MILTON FRIEDMAN & ROSE D. FRIEDMAN, TWO LUCKY PEOPLE: MEMOIRS 605 (1998)).

"charge of the courts to defend them vigilantly."[7] A classic taking is, of course, one in which "the government directly appropriates private property for its own use."[8] In this respect, the Supreme Court of the United States has explained that the Takings Clause is designed "not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking."[9] Thus, governmental action that works a taking of property "necessarily implicates the 'constitutional obligation to pay just compensation.'"[10]

---

[7] Lane, *supra* note 5, at 761; *see also* JOHN LOCKE, *The Second Treatise*, TWO TREATISES OF GOVERNMENT § 124 (Peter Laslett ed., Cambridge Univ. Press 1960) (1698) ("The great and chief end, therefore, of Mens uniting into Commonwealths, and putting themselves under Government, is the Preservation of their Property.").

[8] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (IV) (122 SCt 1465, 152 LE2d 517) (2002) (quoting *E. Enters. v. Apfel*, 524 U.S. 498, 522 (IV) (A) (118 SCt 2131, 141 LE2d 451) (1998)).

[9] *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 315 (II) (107 SCt 2378, 96 LE2d 250) (1987); *see also Armstrong v. United States*, 364 U.S. 40, 49 (III) (80 SCt 1563, 4 LE2d 1554) (1960) ("The Fifth Amendment's guarantee that private property shall not be taken without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."); *Mayor & City Council of Baltimore City v. Valsamaki*, 916 A2d 324, 335 (II) (Md. 2007) ("The right to private property, and the protection of that right, is a bedrock principle of our constitutional republic.").

[10] *First English Evangelical Lutheran Church of Glendale*, 482 U.S. at 315 (II); *see also Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (43 SCt 158, 67 LEd 322) (1922)

Consistent with this cherished constitutional safeguard, the Supreme Court of the United States has recognized that, "though the classic taking is a transfer of property to the State or another private party by eminent domain, the Takings Clause applies to other state actions that achieve the same thing."[11] And the government "takes" property within the meaning of the Fifth Amendment when it "uses its own property in such a way that it destroys private property,"[12] enacts a regulation that "forces a property owner to submit to a permanent physical occupation [cit] or deprives him of all economically beneficial use of his property,"[13] or "recharacterize[s] as public property what was previously private property."[14] Thus, the federal Supreme Court has concluded that "the particular state actor is

---

("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.").

[11] *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 713 (II) (A) (130 SCt 2592, 177 LE2d 184) (2010).

[12] *Id.* (citing *United States v. Causby*, 328 U.S. 256, 261-62 (66 SCt 1062, 90 LEd 1206) (1946); *Pumpelly v. Green Bay Co.*, 20 LEd 557 (1872)).

[13] *Id.* (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425-26 (102 SCt 3164, 73 LE2d 868) (2005); *Lucas v. SC Coastal Council*, 505 U.S. 1003, 1019 (112 SCt 2886, 120 LE2d 798) (1992)).

[14] *Id.* (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163-65 (101 SCt 446, 66 LE2d 358) (1980)).

irrelevant,"[15] and that "[i]f a legislature or a court declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation."[16]

But the Supreme Court of the United States has also recognized in more than one case that "the government may elect to abandon its intrusion or discontinue regulations."[17] Nevertheless, even such temporary takings are not "different in kind from permanent takings, for which the Constitution clearly requires compensation."[18] It is well established, then, that when "the government's activities have already worked a taking of all use of property, no subsequent action by the government can

---

[15] *Id.* at 715 (II) (A) (emphasis omitted).

[16] *Id.* (emphasis omitted).

[17] *First English Evangelical Lutheran Church of Glendale*, 482 U.S. at 318 (II) (citing *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 5 (104 SCt 2187, 81 LE2d 1) (1984); *United States v. Dow*, 357 U.S. 17, 26 (78 SCt 1039, 2 LE2d 1109) (1958)).

[18] *Id.*

relieve it of the duty to provide compensation for the period during which the taking was effective."[19]

Here, the City elected to acquire the subject property by filing a declaration of taking,[20] which "allows the government to take title *immediately* by filing a petition and declaration of taking and paying into the court registry just and adequate compensation as determined by its own appraisal."[21] Indeed, under OCGA § 32-3-7,

> [u]pon the filing of the declaration of taking and the deposit into court, which deposit shall be made at the time the declaration of taking is filed

---

[19] *Id.* at 320 (II); *see also United States v. Dow*, 357 U.S. 17, 26 (78 SCt 1039, 2LE2d 1109) (1958) ("[A]bandonment does not prejudice the property owner. It merely results in an alteration in the property interest taken—from full ownership to one of temporary use and occupation. In such cases compensation would be measured by the principles normally governing the taking of a right to use property temporarily." (citations omitted)); *Cobb Cty. v. McColister*, 261 Ga. 876, 877 (413 SE2d 441) (1992) (recognizing that the Supreme Court of the United States has "held that the Fifth Amendment's Just Compensation Clause require[s] the government to provide just compensation for a temporary taking that denie[s] a landowner all use of his property").

[20] *See* OCGA § 32-3-6 (providing the requirements of a declaration of taking, which must be filed in addition to a petition under OCGA § 32-3-4); *see also* OCGA § 32-3-4 (referring to petition for taking); OCGA § 32-3-5 (providing requirements of petition referred to in OCGA § 32-3-4).

[21] *Windsor v. City of Atlanta*, 287 Ga. 334, 335 n.1 (695 SE2d 576) (2010) (emphasis supplied); *see also Dorsey v. Dep't of Transp.*, 248 Ga. 34, 36 (279 SE2d 707) (1981) ("The petition is not a mere pleading but an instrument which passes title when filed and just and adequate compensation is paid into the court . . . .").

8

to the use of the persons entitled thereto, of the sum of money estimated in the declaration by the condemning authority to be just compensation, *title to the property in fee simple absolute or such lesser interest as is specified in the declaration shall vest in the condemnor; the land shall be deemed to be condemned and taken for the use of the condemnor; and the right to just compensation for the same shall vest in the persons entitled thereto.*[22]

Likewise, OCGA § 32-3-13 provides that "[n]o judgment of any court and no order or ruling of the judge thereof shall be necessary to give effect to the declaration of taking provided for in Code Section 32-3-6; but the same shall be self-executing, subject, however, to the power of the court as provided for in Code Section 32-3-11."[23] The latter Code Section authorizes a superior-court judge to, upon proper pleadings and evidence, "set aside, vacate, and annul the declaration of taking, together with any title acquired thereby . . . ."[24] This may be done in situations of "fraud or bad faith, the improper use of the condemnation powers, the abuse or

---

[22] OCGA § 32-3-7 (a) (emphasis supplied).

[23] OCGA § 32-3-13 (a).

[24] OCGA § 32-3-11 (a).

9

misuse of the condemnation powers, and such other questions as may properly be raised."[25]

As discussed *supra*, Fincher Road challenged the City's petition and declaration of taking under OCGA § 32-3-11, but the trial court dismissed Fincher Road's challenge for a failure to comply with the procedural requirements of OCGA § 32-3-11 (c). We then remanded to the trial court to exercise its discretion under OCGA § 32-3-11 (c) and determine whether Fincher Road was nevertheless entitled to a hearing on its challenge.[26] But because the City dismissed its condemnation proceeding concurrent with receipt of the remittitur, the trial court never determined whether it would—or should—exercise its authority to "set aside, vacate, and annul the declaration of taking, together with any title acquired thereby[.]"[27]

---

[25] *City of Atlanta v. Yusen Air & Sea Servs. Holdings, Inc.*, 263 Ga. App. 82, 82 (1) (587 SE2d 230) (2003) (punctuation omitted); *see also* OCGA § 32-3-11 (b) (providing the questions upon which the power described in subsection (a) is restricted).

[26] *See Fincher Road Invs.*, 314 Ga. App. at 853; *see also* OCGA § 32-3-11 (c) (providing the procedural requirements for a condemnee's challenge brought under subsection (b)).

[27] OCGA § 32-3-11 (a).

10

When a condemning authority abandons its condemnation proceeding, the court with jurisdiction "shall award the owner of any right or title to or interest in such real property such sum as will in the opinion of the court reimburse such owner for his or her reasonable costs and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings[.]"[28] The City argued below, and argues again on appeal, that these statutory damages limit Fincher Road's recovery.

The trial court agreed with the City that Fincher Road was only entitled to recover attorney fees and costs of litigation under OCGA § 22-1-12 (a) and that Fincher Road, contrary to its contention, was not entitled to any other compensation for a temporary taking of its property. Indeed, the trial court concluded that any compensation beyond attorney fees and costs "would be a windfall" because Fincher Road would be fully compensated by receipt of attorney fees and costs. We disagree with this conclusion, and we reject the City's arguments that Fincher Road should not be compensated for a taking it contended was a nullity.

In a recent opinion authored by Justice David Nahmias, our Supreme Court recognized that OCGA § 22-1-12 "was enacted as part of the 2006 'Landowner's Bill

---

[28] OCGA § 22-1-12 (a).

11

of Rights and Private Property Protection Act,' which *expanded* property owners' protections against condemnation rather than limiting those safeguards."[29] Instead, OCGA § 22-1-12 functions to "allocate the *costs* imposed on the condemnor to the condemnees if the condemnor abandons a condemnation action *at any point*."[30] And unlike most plaintiffs, "condemnors that abandon their actions must . . . pay the property owner's reasonable costs and expenses actually incurred because of the condemnation proceedings, including attorney, appraisal, and engineering fees."[31] Here, while the City's abandonment of its action undoubtedly entitled Fincher Road to damages under OCGA § 22-1-12, the City's abandonment and obligation to pay those statutory damages in no way relieved it of "the duty to provide compensation for the period during which the taking was effective."[32]

---

[29] *Dillard Land Invs., LLC v. Fulton Cty.*, 295 Ga. 515, 522-23 (2) (c) (761 SE2d 282) (2014); *see also* U.S. CONST. Art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ."); GA. CONST. Art.3, Sec. 6, Para. I ("The General Assembly shall have the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state.").

[30] *Dillard Land Invs.*, 295 Ga. at 523 (2) (c).

[31] *Id.*

[32] *First English Evangelical Lutheran Church of Glendale*, 482 U.S. at 321 (II).

Indeed, while it is certainly true, as our Supreme Court has held, that a declaration of taking that fails to strictly comply with statutory requirements "cannot vest title to the land in the condemnor,"[33] a trial court must still be presented with the issue of compliance so that it may make a determination as to same and actually exercise its authority to set aside, vacate, or annul a declaration of taking.[34] But given the timing of the City's dismissal, that never occurred in this case. Accordingly, Fincher Road is entitled to just and adequate compensation for the City's temporary

---

[33] *Dorsey*, 248 Ga. at 37.

[34] *Cf. Postell v. Bd. of Comm'rs of Houston Cty.*, 317 Ga. App. 898, 899 (1) (732 SE2d 303) (2012) (holding that, notwithstanding appellant's contention that County failed to comply with statutory requirements, appellant had no standing to challenge declaration of taking because he had no interest in the property at the time declaration was filed, and title accordingly passed upon the filing of same); *Yusen Air & Sea Serv. Holdings*, 263 Ga. App. at 84 (holding that trial court properly set aside the taking of appellee's property when City failed to comply with OCGA § 32-3-6 and, accordingly, City's declaration of taking could not vest title in the City).

taking of its property,[35] and OCGA § 22-1-12 (a) in no way acts to limit Fincher Road's right of recovery in this regard.

For all of the foregoing reasons, we affirm the portion of the trial court's order determining that Fincher Road was entitled to attorney fees and costs of litigation under OCGA § 22-1-12, but we reverse the court's ruling that Fincher Road was not entitled to any additional compensation for the government's temporary taking of its property.

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Ellington, P. J., concurs in judgment only.*

---

[35] *See Dow*, 357 U.S. at 26 ("[A]bandonment does not prejudice the property owner. It merely results in an alteration in the property interest taken—from full ownership to one of temporary use and occupation. In such cases compensation would be measured by the principles normally governing the taking of a right to use property temporarily." (citations omitted)); *McColister*, 261 Ga. at 877 (recognizing that the Supreme Court of the United States has "held that the Fifth Amendment's Just Compensation Clause require[s] the government to provide just compensation for a temporary taking that denie[s] a landowner all use of his property").