## S11F0835. SIGAL v. SIGAL.
(716 SE2d 206)

HUNSTEIN, Chief Justice.

Pursuant to this Court's pilot project for divorce cases (now set forth as Supreme Court Rule 34 (4)), we granted appellant Amy Sigal's non-frivolous application for discretionary appeal of the parties' final judgment of divorce. Appellant contends, inter alia, that the trial court abused its discretion by entering its decree nunc pro tunc so as to eliminate a "transition period" from supervised to unsupervised visitation that the trial court had orally announced it was providing for the welfare of the couple's two children. We agree and accordingly reverse the trial court's order.

The facts of the case are essentially undisputed. Appellant and appellee David Sigal were married in June 2002. They have two children: a daughter who was born in November 2004 and a son who was born in February 2007. The son has speech difficulties and

attention/focusing problems, is hyperactive and has required the assignment of a special facilitator to provide him with one-on-one supervision in preschool. In July 2008, appellant petitioned for a decree of separate maintenance. Her petition was granted in January 2009 after a hearing. As reflected in the decree, appellee's cocaine and alcohol abuse problems were a concern such that all of his visitation with the children was required to be supervised and appellant was accorded the right to insist that appellee submit to drug/alcohol testing; appellee's visitation with the children was conditioned on his not refusing to participate in the testing and on not testing positive for drugs or alcohol.

Appellant filed for divorce nine months later in September 2009. In her petition she asserted that all issues regarding custody, visitation and support of the children were fully adjudicated in the decree of separate maintenance. Appellee disagreed, however, and in his answer he sought "reasonable and fair unsupervised visitation" with the children. Notwithstanding appellee's claim for unsupervised visitation, appellant and her counsel made the decision to adduce only appellant's own testimony at the final hearing held on April 13, 2010. She explained that she was concerned about the children visiting appellee because his behavior indicated that he had not progressed in resolving his addiction problems; stated that his family did not know where he was currently living; and asked that the court continue the supervised visits. Appellee then testified on his own behalf, provided an address where he had moved two weeks earlier[1] and introduced evidence that he had tested negative for drugs on drug screening tests conducted by his current employer. He also called as a witness his Alcoholics Anonymous sponsor, who, when questioned about the "motivating factor for [appellee's] sobriety" answered that appellee "talks about his children constantly in almost every [conversation]. But beyond that is just a desire to be whole again."

At the conclusion of the hearing, the trial court orally announced its ruling, including its intent to modify the visitation schedule set forth in the separate maintenance decree so as to allow appellee to have unsupervised visitation with the children. In order to ameliorate appellant's concerns, the trial court orally announced it would authorize appellant to require appellee to submit to a random drug test within the next 45 days and, should appellee pass the test, also announced it would gradually transition the children from their current supervised visitation schedule into unsupervised visitation by

---

[1] Appellee testified that he moved because he "found a new place that could accommodate the children and better living environment."

providing appellee with one day of unsupervised visitation with the children for the first month and increasing the number by one day a month for the following two months. At the conclusion of the three-month transition period, appellee would be allowed the standard schedule of unsupervised visitation with his children on alternating weekends and holidays. Having resolved all issues in its oral ruling, the trial court directed appellant's attorney to draft the final order, which counsel agreed to do.

For reasons not reflected in the record, the final judgment and decree of divorce was not entered until September 13, 2010.[2] The visitation provision in the decree provided for the "transition period" as set forth by the trial court in its oral ruling at the April 13 hearing. However, the trial court expressly provided that the visitation provision was entered "nunc pro tunc beginning April 13, 2010." As a result of the nunc pro tunc language, that part of the visitation provision providing for the three-month "transition period" had already expired by the time the final decree was entered. No other portion of the decree was made nunc pro tunc to the April 13, 2010 hearing.

1. As we observed in *Coleman v. Coleman*, 240 Ga. 417, 418 (1) (240 SE2d 870) (1977), " '[a] nunc pro tunc entry is for the purpose of recording some action that was taken or judgment rendered previously to the making of the entry, which is to take effect as of the former date. . . . ' [Cits.]" A nunc pro tunc order may properly be used to cause a written judgment of divorce to relate back to the date

---

[2] The record reflects that, in August 2010, appellant filed a "motion for reconsideration" of the trial court's unsupervised visitation oral pronouncement and a motion "for emergency relief to suspend unsupervised visitation." Appellant attached affidavits to these motions, many of which contained information from persons readily available to appellant before the April hearing who either detailed appellee's cocaine addiction history or discussed the difficulties presented by the special needs of the parties' son. However, some of the affidavits contained information that became available to appellant only after the April hearing. In particular, appellant adduced an affidavit from a private investigator who went to the address of appellee's new home, which appellee first provided at the April hearing and represented in his testimony there that this new place "could accommodate the children and better living environment." In this affidavit the private investigator averred, inter alia, that appellee's home is in a run-down neighborhood with many adjacent houses abandoned after having been condemned for "black mold"; that she went through the "repulsive" trash outside the home, which was "full of maggots, inside, and out" that seemed to indicate an unclean living environment in the house; and that the trash included items which, from her experience as an investigator, she knew could be involved in the use of illegal drugs, noting in particular the burnt steel wool she found that may indicate it was used as a filter for crack pipes. Additionally, the investigator conducted background checks on the other apparent boarders and discovered that one had a lengthy criminal record, including armed robbery and aggravated assault, and another boarder had a social security number that was being used by two other persons. Nothing in the decree indicates that the trial court considered the affidavits submitted by appellant and the record does not reflect any ruling by the trial court on the two motions appellant filed.

of the original hearing and oral ruling. See *Maples v. Maples*, 289 Ga. 560 (713 SE2d 865) (2011). But although every court has the power "[t]o amend and control its . . . orders, so as to make them conformable to law and justice, and to amend it own records, so as to make them conform to the truth," OCGA § 15-1-3 (6); see also *Head v. Yeomans*, 189 Ga. 335 (6 SE2d 704) (1939); *Coleman v. Fortner*, 260 Ga. App. 373 (3) (579 SE2d 792) (2003), the nunc pro tunc action as to the gradual transition provision in the decree here did not serve to conform the decree to the truth or the justice of the situation as originally intended by the trial court. Rather, it had the exact opposite effect by eliminating the truth and justice recognized by the trial court at the April hearing regarding the need of these children for a gradual transition period from supervised to unsupervised visitation with their father.

In *Maples v. Maples*, supra, we reiterated the well-established rule that a trial court's authority to enter a decree nunc pro tunc so as to perfect the record as between the parties is subject to "a different rule" when such an action would apply " 'to sureties, intervening bona fide purchasers, *or innocent third parties.*' [Cit.]" (Emphasis supplied.) Id. at 562. See also *Norman v. Ault*, 287 Ga. 324 (5) (695 SE2d 633) (2010); *Moore v. Moore*, 229 Ga. 600 (2) (193 SE2d 608) (1972), overruled on other grounds, *McCauley v. McCauley*, 259 Ga. 72 (377 SE2d 676) (1989); *Swindell v. Swindell*, 208 Ga. 727 (1) (69 SE2d 197) (1952), overruled on other grounds, *McCauley*, supra. Under the unique circumstances of the instant case, we hold that the parties' minor children qualify here as innocent third parties whose interests are adversely affected by the entry of the visitation provision nunc pro tunc because that action eliminated a provision expressly meant for the children's best welfare. See also *Dellinger v. Dellinger*, 278 Ga. 732 (1) (609 SE2d 331) (2004) (visitation rights necessarily implicate the best interests of the child). We accordingly conclude that the trial court abused its discretion when it made the visitation period nunc pro tunc to April 13, 2010.

2. Our ruling above renders it unnecessary to address appellant's remaining enumerations of error.

*Judgment reversed and case remanded with direction. All the Justices concur, except Carley, P. J., and Hines, J., who dissent.*

DECIDED OCTOBER 3, 2011.

*Callner, Portnoy & Strawser, Kathy L. Portnoy*, for appellant.

*Roger W. Orlando, Dana Dayagi*, for appellee.