303 Ga. 764
FINAL COPY

S17G1478. MONDY et al. v. MAGNOLIA ADVANCED MATERIALS, INC.

NAHMIAS, Justice.

We granted a writ of certiorari in this case to decide whether, when a motion to recuse the trial judge is filed after the judge has orally held a party's attorney in contempt, the recusal motion must be decided before the judge may properly proceed to enter a written contempt order. In Mondy v. Magnolia Advanced Materials, Inc., 341 Ga. App. 141 (797 SE2d 506) (2017), the Court of Appeals held that the trial judge can ignore the pending recusal motion and enter the contempt order. See id. at 142-143. We disapprove that holding, concluding that under Uniform Superior Court Rule ("USCR") 25.3, the entry of a written contempt order is an "act upon the merits" of the contempt proceeding that a trial judge whose impartiality has been formally called into question may not properly perform until the recusal motion has been decided.

We also conclude, however, that — even assuming the motion to recuse

in this case was not only filed with the clerk but also "presented" to the trial judge as USCR 25.3 requires — the motion was legally insufficient on its face. Thus, if properly considered, the recusal motion would not have required the trial judge's recusal, and the judge's procedural error does not require us to vacate the contempt order that followed. We therefore ultimately affirm the judgment of the Court of Appeals.

1. The record shows the following. Michael O. Mondy is a lawyer. His client, Moses Langford, is the defendant in a breach of contract and trade secrets lawsuit brought in the Superior Court of DeKalb County by Langford's former employer, Magnolia Advanced Materials, Inc. Langford is also the plaintiff in an employment discrimination case against Magnolia brought in federal court in Georgia, and Magnolia is also the defendant in a trade secrets case brought by its competitor, Epoplex, in federal court in South Carolina.

In August 2015, a few days after Epoplex issued a federal court subpoena to Langford requesting Magnolia documents, the trial judge in the state case entered an injunction prohibiting Mondy and Langford from directly or indirectly disclosing or permitting unauthorized access to Magnolia's non-public information. Magnolia then filed a motion to quash the federal subpoena, and

2

a federal magistrate judge entered an order staying compliance with the subpoena until further order. A few days later, Mondy filed an unsealed brief with 28 exhibits opposing the motion to quash. Because the brief was not sealed, Magnolia's non-public information in the exhibits was made available not only to the general public but to Magnolia's competitor Epoplex — to whom Mondy also directly sent a Dropbox link containing the brief and exhibits.

Magnolia then filed a motion in the state case to hold Mondy and Langford in contempt of the injunction. On November 23, 2015, the trial judge held an evidentiary hearing at which Mondy testified and exhibits were admitted. During the hearing, the judge orally held Mondy in contempt for violating the injunction. The judge directed Magnolia's counsel to submit a proposed order within ten days. The judge did not announce any sanction for the contempt, but directed that a hearing be scheduled regarding an award of attorney fees to Magnolia.[1]

Five business days later, on November 30, Mondy filed with the trial court

---

[1] The judge did not hold Langford in contempt of the injunction. Another contempt motion filed by Magnolia was orally denied on the ground that Mondy and Langford had complied with the pertinent aspect of the injunction. The judge also orally granted Magnolia's motion to compel discovery and directed Magnolia's counsel to submit a proposed order within 20 days.

clerk a motion to recuse the trial judge and his own supporting affidavit. The substance of the recusal motion was that the judge's factual findings and legal conclusions regarding the contempt motion showed that the judge was prejudiced against Mondy; in his affidavit, Mondy also averred that the judge was prejudiced against him based on the judge's rulings and "condescending" and "angry" facial expressions and tone during the contempt hearing and in previous, unrelated cases. The judge did not immediately rule on the recusal motion. Instead, two weeks later, on December 15, 2015, the judge entered an 11-page written order holding Mondy in contempt. Forty minutes after that, the judge issued the following order: "I hereby recuse myself voluntarily from the above-styled case. The Superior Court Administrator shall assign the case to a different [judge]." Mondy appealed the contempt order. See OCGA § 5-6-34 (a) (2) (authorizing an immediate direct appeal of "[a]ll judgments involving . . . contempt cases").

The Court of Appeals affirmed the contempt order on the merits, explaining that Mondy had failed to include and properly identify evidence in the record to support his claims of error, and also held that Mondy could not appeal the trial judge's oral ruling granting a motion to compel discovery

4

because it had not been reduced to a written order before Mondy appealed. See Mondy, 341 Ga. App. at 144-146. Before doing that, however, the court rejected Mondy's contention that it was improper for the trial judge to enter the written contempt order before disposing of the recusal motion. See id. at 142-143. The Court of Appeals recognized that USCR 25.3 directs that, "[w]hen a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit," denying the motion if it is untimely or legally insufficient and otherwise directing that the motion be assigned to another judge to resolve. But the Court of Appeals concluded that the trial judge did not "act upon the merits" of the case by issuing the contempt order, which was characterized as merely "an administrative process that effectuated a ruling made before Mondy filed his motion to recuse." Mondy, 341 Ga. App. at 143. The court also analogized this case to cases holding that "a plaintiff may not foreclose a judge from acting on [the judge's] orally-announced intention to grant a defendant's dispositive motion by dismissing his complaint." Id.

This Court granted Mondy's petition for a writ of certiorari solely to

5

address the recusal motion issue.

2.    "'It is vital to the functioning of the courts that the public believe in the absolute integrity and impartiality of its judges, and judicial recusal serves as a linchpin for the underlying proposition that a court should be fair and impartial.'" Mayor & Aldermen of the City of Savannah v. Batson-Cook Co., 291 Ga. 114, 114 (728 SE2d 189) (2012) (citations omitted).  The formal procedures governing recusal of superior court judges are found in USCR 25.  See Batson-Cook Co., 291 Ga. at 116 & n. 3.  An understanding of the basic procedural and substantive rules of recusal (or "disqualification," as that term is used interchangeably with "recusal" in this context) is necessary to understand our decision in this case.  We recently outlined those rules in Post v. State, 298 Ga. 241, 243-245 (779 SE2d 624) (2015), and we will now repeat much of what we explained there.

USCR 25.3 directs that when the trial judge assigned to a case is presented with a recusal motion and an accompanying affidavit, "the judge shall temporarily cease to act upon the merits of the matter" and determine "immediately": (1) whether the motion is timely; (2) whether the affidavit is legally sufficient; and (3) whether the affidavit sets forth facts that, if proved,

would warrant the assigned judge's recusal from the case. See <u>Horn v. Shepherd</u>, 294 Ga. 468, 471 (754 SE2d 367) (2014); <u>Birt v. State</u>, 256 Ga. 483, 484 (350 SE2d 241) (1986). If all three criteria are met, "another judge shall be assigned to hear the motion to recuse." USCR 25.3. The decision about referring a recusal motion for reassignment to another judge does not involve an exercise of discretion by the judge whose recusal is sought. See <u>Batson-Cook Co.</u>, 291 Ga. at 119. Rather, whether the three threshold criteria have been met is a question of law, which an appellate court reviews de novo. See id.

To be timely, a recusal motion and accompanying affidavit must be filed and presented to the judge "not later than five (5) days after the affiant first learned of the alleged grounds" for the judge's recusal "and not later than ten (10) days prior to the hearing or trial which is the subject of [the] recusal." USCR 25.1. Failure to meet these deadlines may be excused, but only if the motion and affidavit establish "good cause" for the delay, and "[i]n no event shall the motion be allowed to delay the trial or proceeding." Id. If a recusal motion presents allegations, some of which are timely and some untimely, only the timely allegations will be considered. See, e.g., <u>Henderson v. State</u>, 295 Ga.

7

333, 335 (759 SE2d 827) (2014); <u>Woodham v. Atlanta Dev. Auth.</u>, 335 Ga. App. 126, 129 (779 SE2d 116) (2015).

For the affidavit accompanying a recusal motion to be legally sufficient, it must contain "the three elements essential to a complete affidavit . . . ." <u>Batson-Cook Co.</u>, 291 Ga. at 120. The affidavit or affidavits accompanying the recusal motion must also "fully assert the facts upon which the motion is founded" and present "all evidence" on the motion. USCR 25.1.

Allegations consisting of "bare conclusions and opinions" that the assigned judge is biased or prejudiced for or against a party, USCR 25.2, "are not legally sufficient to support a recusal motion or to justify forwarding the motion for decision by another judge." <u>Horn</u>, 294 Ga. at 472. In all other respects, however, the assigned judge must take the motion at face value, treating it as though "all of the facts set forth in the affidavit are true." USCR 25.3. See <u>Batson-Cook Co.</u>, 291 Ga. at 120-121 ("The rationale for requiring the judge to take as true the affidavit's facts even when the judge knows the facts are not true 'is easy to divine. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the (rule) is directed.' <u>Berger v. United States</u>, 255 U. S. 22, 36 (41 SC 230, 65 LE 481) (1921)."). In

deciding whether this assumed state of facts would require recusal, USCR 25.3 says that the assigned judge is to be guided by Canon 3E of the former Georgia Code of Judicial Conduct, which has been replaced by Rule 2.11 of the revised Code of Judicial Conduct that took effect on January 1, 2016.

Rule 2.11 (A) in the revised Code says generally that "[j]udges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned," followed by a non-exclusive list of specific situations in which recusal is required, including when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ." Rule 2.11 (A) (1) (emphasis omitted). The standard is an objective one. The facts "must be considered from the perspective of a reasonable person rather than from the perception of interested parties or their lawyer-advocates, or from the subjective perspective of the judge whose continued presence in the case is at issue." Batson-Cook Co., 291 Ga. at 121 (citation omitted). The operative question is whether "a fair-minded and impartial person would have a reasonable perception of a judge's lack of impartiality based upon objective facts set forth in the affidavit or reasonable inferences therefrom." Id.

If the motion and affidavit, taken at face value, satisfy the three threshold

9

criteria, the assigned judge must refer the motion for reassignment and may not "oppose the motion." USCR 25.3. The judge whose recusal is sought may not respond to the motion or attempt to refute the allegations, which "stand denied automatically," id., no matter how false or even defamatory the judge might know or perceive the allegations to be. See Isaacs v. State, 257 Ga. 126, 128 (355 SE2d 644) (1987). If the recusal motion satisfies the test for referral to another judge, the challenged judge "shall neither select nor participate in the selection of the judge to hear the motion." USCR 25.5. In a judicial circuit with three or more superior court judges, see OCGA § 15-6-2 (11), a judge must be assigned to hear and decide the motion using the circuit's "existing random, impartial case assignment method." USCR 25.4 (C). That judge may decide the motion solely on the affidavits, but also has discretion to convene an evidentiary hearing. See USCR 25.6. Either way, after considering the evidence, the judge must rule on the merits of the motion and "make written findings and conclusions." Id. If the recusal motion is denied, the original judge will continue to preside over the case. If the motion is granted, the judge originally assigned to the case is recused, and another judge must then be selected to preside over the case following the same procedure that was used to select the

10

judge who decided the recusal motion. See id. The decision of the judge assigned to hear the recusal motion — the ruling on the merits of the motion, based on findings about which allegations are in fact true and what inferences should in fact be made — is reviewed on appeal only for abuse of discretion. See Batson-Cook Co., 291 Ga. at 119.

Finally, if a trial judge determines at any time that he is required to disqualify, he may voluntarily recuse from a case, on the motion of a party or on the judge's own motion. See USCR 25.7; Gude v. State, 289 Ga. 46, 50 (709 SE2d 206) (2011) ("A trial judge has an ethical duty to recuse himself or herself sua sponte anytime the judge is aware of grounds to do so."). "A voluntary recusal shall not be construed as either an admission or denial to any allegations which have been set out in [a recusal] motion." USCR 25.7. If the judge voluntarily recuses, the case is reassigned to another judge using the procedures described in USCR 25.4.

The principal question in this case focuses on the text of Rule 25.3 that directs a trial judge faced with a recusal motion to "temporarily cease to act upon the merits of the matter and . . . immediately determine the timeliness of the motion and the legal sufficiency of the affidavit," denying the motion if it

is untimely or insufficient on its face and otherwise referring it to another judge for decision. The trial judge in this case did not immediately determine the facial validity of Mondy's motion to recuse him. Instead, the motion remained pending before the judge when, 15 days later, he entered the order holding Mondy in contempt. The Court of Appeals held that the trial judge acted properly; as we will explain, we disagree, although we conclude that any error was harmless in this case because Mondy's recusal motion was legally insufficient on its face.

3. Before moving to that analysis, however, we recognize that there is a preliminary question about whether Mondy properly "presented" his recusal motion to the trial judge for decision. Although appellate cases discussing the timeliness of recusal motions often refer simply to the motion being "filed," see, e.g., Post, 298 Ga. at 246-247; Henderson, 295 Ga. at 333-334, the rules plainly require that, to be timely, a recusal motion must be both "filed" (an act often done in the clerk of court's office, without immediate notification to the judge handling the case, see OCGA § 9-11-5 (e)) *and* "presented" to the judge (an act that makes the judge immediately and personally aware of the recusal issue). See USCR 25.1 ("Filing *and presentation to the judge* shall be not later than

12

five (5) days after the affiant first learned of the alleged grounds for disqualification . . . ." (emphasis supplied)); USCR 25.3 (establishing duties of the trial judge beginning "[w]hen a judge is *presented* with a motion to recuse" (emphasis supplied)).

Mondy's recusal motion and accompanying affidavit are each stamped filed by the clerk of court, but there appears to be no direct evidence in the record that the motion was also presented to the trial judge that same day (which was the last day the motion would be timely) or at any time before the judge entered the contempt order. On the other hand, in civil actions, USCR 6.1 requires the clerk of court in judicial circuits using an individual assignment system, like the circuit in which the trial judge here serves, to "promptly upon filing" furnish to the assigned judge a copy of pretrial motions not consented to by all parties, which would include the recusal motion in this case. "Promptly" means "without delay." Oxford English Dictionary, OED Online (2018). We also know that the trial judge voluntarily recused himself just after entering the contempt order.

From the start, the parties have litigated the recusal issue on the apparent assumption that Mondy's recusal motion was properly and timely presented to

13

the trial judge, and the Court of Appeals did not address this question. Because we ultimately find no reversible error in the trial court's judgment, we need not decide this question, but we note that if a party wishes its recusal motion to preclude a judge from continuing to act on the merits of a case (and to have the motion deemed timely), the party must ensure in some fashion that the judge is made aware of the recusal issue.[2]

---

[2] The special concurrence would resolve this case on the "presentment" ground. However, the relevant facts are unclear, there are no precedents applying the presentment component of USCR 25, and Magnolia has never disputed that proper presentment occurred; indeed, neither party has ever mentioned the issue, much less helped to identify any pertinent facts and law. It is therefore not a good candidate for affirming the Court of Appeals' opinion under the "right for any reason" doctrine. See generally City of Gainesville v. Dodd, 275 Ga. 834, 839 (573 SE2d 369) (2002); Bullington v. Blakely Crop Hail, Inc., 294 Ga. App. 147, 152 (668 SE2d 732) (2008). Even if we vacated the Court of Appeals' judgment and remanded the case for that court to address the presentment issue with the benefit of briefing, the Court of Appeals could simply re-enter its opinion with the explanation that its resolution of the question on which this Court granted certiorari — its holding that a trial judge can enter a contempt order memorializing an oral contempt ruling, notwithstanding a pending motion to recuse — moots the need to address any alleged defects in the recusal motion. And that is the point: This Court unanimously granted a writ of certiorari to review the holding in Division 1 of the Court of Appeals' opinion, a holding that we conclude is erroneous, not to strive to find another ground, never mentioned by the parties, on which we can rule in Magnolia's favor — leaving the Court of Appeals' erroneous holding in place as precedent binding every Georgia court except ours. Notably, the special concurrence identifies nothing incorrect in our analysis of the certiorari issue.

We mention the presentment issue only because it has often been overlooked in the case law even though it is clearly a distinct requirement of USCR 25 of which litigants and courts should be cognizant. We need not explore the matter in every detail today, but it is worth noting that we are dubious that the presentment requirement is as strict as the special concurrence suggests. It is important that a recusal motion be brought in some manner to the personal attention of the judge whose impartiality it challenges, rather than buried in a file or in a stack of other motions, lest the judge continue to preside over the case unaware of the issue. But we doubt that Georgia's trial judges would appreciate our reading the rule so strictly as to demand that, to be valid, a recusal motion be presented to the judge personally, rather than delivered to an intermediary like the clerk of court or the judge's secretary or brought to the judge's attention by e-mail or mention during a

14

4.     Turning to the question we posed in granting certiorari, Magnolia offers two arguments why the contempt order should not be considered an action "upon the merits of the matter." Neither argument is persuasive.

(a)     Magnolia first asserts that the contempt order did not relate to the merits of the underlying contract and trade secrets lawsuit between Magnolia and Langford, but rather to the "ancillary" matter of contempt by Langford's attorney. See Brown v. King, 266 Ga. 890, 890 (472 SE2d 65) (1996) (holding that "a contempt action to enforce court-ordered child support payments is an independent proceeding that is ancillary to the divorce action [in which the order was entered] and not a new civil action").[3]  But even if we ignore the connections between the contempt proceeding and the underlying lawsuit — including the common caption and case number used for both — the motion to recuse that Mondy filed sought to disqualify the trial judge not only from

hearing. Judges should be able to rest assured that they will not be regularly accosted by litigants bearing motions to recuse them.

[3] This case involves "indirect" contempt of court, because Mondy's violation of the trial judge's injunction against disclosure of Magnolia's non-public information occurred outside the court's presence, as opposed to "direct" contempt committed in the court's presence. See Ramirez v. State, 279 Ga. 13, 14 (608 SE2d 645) (2005). Judges are authorized as a matter of due process and other law to deal much more summarily and immediately with direct contempt committed in their presence in open court than with indirect contempt of their orders, see id. at 14-15, and this opinion deals only with recusal motions in the context of indirect contempt proceedings.

15

continuing to preside over the lawsuit against Langford but also from taking further action on *the contempt motion brought against Mondy based on the judge's alleged prejudice against Mondy.* Indeed, the judicial action that Mondy challenges in this Court is the trial judge's failure to recuse and subsequent entry of the order holding Mondy in contempt, not any action on the substance of the underlying lawsuit.

Thus, even if the contempt proceeding was entirely collateral to the underlying lawsuit, it is the contempt motion that qualifies as the "matter" on the merits of which the recusal motion sought to prevent the trial judge from acting further. Indeed, under Magnolia's argument, trial judges would have free reign to ignore motions to recuse them from adjudicating contempt proceedings ancillary to underlying lawsuits, even though contempt proceedings often heighten concerns about judicial impartiality because they involve claims that the alleged contemnor has willfully violated the authority or order of the court itself. See, e.g., In re Crane, 253 Ga. 667, 668-669 (324 SE2d 443) (1985) (discussing when a judge must disqualify himself from a proceeding on criminal

contempt as a matter of due process).[4]

(b)     Magnolia's second argument that the contempt order was not an action "upon the merits" of the matter mirrors the Court of Appeals' conclusion that the entry of the order was a mere "administrative process that effectuated a ruling made before Mondy filed his motion to recuse." Mondy, 341 Ga. App. at 143.  But the written contempt order was more than that.

A decision that a trial judge may make without any action or involvement of the parties — the decision to voluntarily recuse from a case, for example, or to reassign a motion to recuse to another judge for decision — might be deemed administrative, whether that decision is effectuated orally or in writing.  Cf. Allen v. State, 102 Ga. 619, 626 (29 SE 470) (1897) (explaining that "a disqualified judge may do such formal acts as are necessary to enable the case to be brought before a proper tribunal for adjudication").  A decision by a trial judge to hold someone in contempt of court, however, is not just "administrative"; it is a ruling that has substantive consequences for the

---

[4] Of course, a determination that the trial judge must be recused from presiding over a contempt proceeding due to "personal bias or prejudice concerning a party or a party's lawyer" would normally also mean that the judge must be recused from presiding over the underlying lawsuit involving the same party or lawyer for the same reason. Georgia Code of Judicial Conduct Rule 2.11 (A)(1).  So when it comes to judicial recusal on that ground, contempt actions and the lawsuits from which they arise are usually intertwined.

17

contemnor, which may include coercive directions, fines, and even incarceration, as well as collateral consequences such as professional discipline. And the written order holding someone in contempt is not an administrative act that merely "effectuate[s]" a previous oral ruling; while an oral ruling by a trial judge may require immediate compliance by the person to whom it is directed (more about this later), the memorialization of the order in writing has substantive import.

To begin with, until an oral ruling is reduced to writing, signed by the judge, and filed by the clerk, it generally cannot be appealed. See American Lien Fund, LLC v. Dixon, 286 Ga. 562, 562 n.1 (690 SE2d 415) (2010); Titelman v. Stedman, 277 Ga. 460, 460-461 (591 SE2d 774) (2003). See also OCGA § 5-6-31 ("The filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of [the Appellate Practice Act].").[5] Thus, the memorialization of a ruling in a written order — a "judgment" — is normally the judicial act necessary for the party bound by the

---

[5] If a trial judge refuses to put an oral ruling in writing and the transcript shows that the party aggrieved by the ruling asked the judge to put the ruling in a written order, an appeal may be allowed. See State v. Morrell, 281 Ga. 152, 153 (635 SE2d 716) (2006). The party may also file a mandamus petition seeking to require the judge to fulfill his duty to provide a written order. See id.

ruling to seek relief from a higher court.

Moreover, until an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment. See, e.g., Williams v. Williams, 295 Ga. 113, 114 (757 SE2d 859) (2014). Even when a written order mirrors a ruling previously announced orally, there is judicial discretion involved — the discretion to leave the ruling unchanged. But often the written order is significantly different than the oral ruling, as it was in this case.

The trial judge's oral ruling holding Mondy in contempt of the non-disclosure injunction was summary — one sentence near the end of a hearing that produced a 91-page transcript, with no explicit findings of fact, citations of authority, or conclusions of law supporting that ruling. The judge's 11-page written order may have reached the same result of holding Mondy in contempt, but that holding was supported by extensive findings of fact based on the testimony and exhibits presented at the hearing and detailed conclusions of law based on analysis of the record and citation of multiple cases. The order thus expressly specified which portions of the factual record the judge credited and

19

relied upon as well as the judge's legal analysis, trumping any implications that might otherwise be drawn from the bare oral ruling and affecting how the contempt ruling would be reviewed on appeal. See, e.g., Strickland v. Strickland, 298 Ga. 630, 634-635 & n.6 (783 SE2d 606) (2016); Hughes v. State, 296 Ga. 744, 746-747 (770 SE2d 636) (2015). That the written order was proposed by Magnolia's counsel does not mean that the trial judge did not exercise his discretion regarding its contents. See Brockman v. State, 292 Ga. 707, 713 (739 SE2d 332) (2013) (rejecting the argument that the trial court failed to exercise its discretion when it adopted a party's proposed order verbatim); Fuller v. Fuller, 279 Ga. 805, 806 (621 SE2d 419) (2005) (noting that "[e]ven when a trial court adopts a proposed order verbatim, the findings of fact therein are those of the court and may be reversed only if they are clearly erroneous").

For these reasons, we reject the contention that the written contempt order — the judgment under review by the Court of Appeals and this Court — was merely administrative and not an action "upon the merits of the matter" under USCR 25.3.

(c) Magnolia also points to the analogy that the Court of Appeals drew

20

between the situation presented here and cases holding that a plaintiff "may not foreclose a judge from acting on [the judge's] orally-announced intention to grant a defendant's dispositive motion by dismissing his complaint." Mondy, 341 Ga. App. at 143. The court cited Dillard Land Investments v. Fulton County, 295 Ga. 515 (761 SE2d 282) (2014), where this Court said:

> The principle at the foundation of these decisions is that, after a party has taken the chances of litigation and knows what is the actual result reached in the suit by the tribunal which is to pass upon it, he can not, by exercising his right of voluntary dismissal, deprive the opposite party of the victory thus gained.

Id. at 519-520 (citation and punctuation omitted).

But the situations presented in Dillard and in this case are actually quite different. Dillard and the longstanding precedents upon which it relied prevent a plaintiff from effectively *erasing* a trial court's orally-announced-but-not-yet-written-down ruling on a *dispositive* motion by filing a voluntary dismissal of the case without prejudice under OCGA § 9-11-41 (a), after which the plaintiff can generally file a renewal action and start the litigation over from scratch. See OCGA § 9-2-61 (a); Robinson v. Boyd, 288 Ga. 53, 56 (701 SE2d 165) (2010) ("[I]t is firmly established that the renewal suit is deemed an action de novo, in which defenses to the original action are inapplicable unless they would render

21

the original action void and not just voidable."). By contrast, a recusal motion does not deprive a previously made oral ruling of its effect on the parties, nor does a recusal motion end the case, much less allow the moving party to erase what has happened in the litigation and start over. See Propst v. Morgan, 288 Ga. 862, 864 (708 SE2d 291) (2011) (explaining that if a motion to recuse is improperly denied, "all proceedings *after* the filing of the motion" are invalid (emphasis supplied)); In re Estate of Sands-Kadel, 292 Ga. App. 343, 344 (665 SE2d 46) (2008) (holding that a motion to recuse did not affect a ruling made before it was filed). To the contrary, under our holding today, the filing of a motion to recuse would at most leave a prior oral contempt ruling in place and the contempt proceeding (as well as the underlying lawsuit) pending until the recusal issue is properly resolved, at which point the litigation continues before either the original judge or a newly assigned judge. The rationale of Dillard simply does not apply to this case.

(d) Finally, Magnolia predicts dire consequences from a holding that, when a motion to recuse is filed after the trial judge announces an oral contempt ruling but before a written contempt order is entered, the recusal motion should be decided before the contempt order is issued. Magnolia warns that meritless

22

or even frivolous recusal motions will become commonplace in contempt proceedings. We do not believe the heavens will fall.

For starters, if a judge's ruling made in open court is clearly intended to take effect immediately, it is effective against the litigants immediately, not only when it is reduced to a written order. See Leary v. Julian, 225 Ga. App. 472, 473 (484 SE2d 75) (1997); Malautea v. Suzuki Motor Co., 987 F2d 1536, 1542 n.7 (11th Cir. 1993) ("Oral orders are just as binding on litigants as written orders; the consequences for violating an oral order are the same as those for violating a written order.").[6] Thus, if a judge orally holds a person in indirect contempt for violation of a previous order and makes it clear that the ruling is effective immediately, the person must comply with the ruling, including any sanction or purge condition imposed, until the ruling is superseded, vacated, or reversed. See OCGA § 5-6-13 (governing the granting of supersedeas by trial courts in contempt cases). The subsequent filing of a motion to recuse will not

___

[6] This is why, for example, parties and their counsel must comply with many rulings a judge makes orally in pretrial hearings on evidentiary and procedural as well as substantive issues, long before a written judgment is entered in the case, and why the trial court may make a written order apply nunc pro tunc to the oral announcement of a ruling. See, e.g., Sigal v. Sigal, 289 Ga. 814, 816-817 (716 SE2d 206) (2011) ("A nunc pro tunc order may properly be used to cause a written judgment . . . to relate back to the date of the original hearing and oral ruling."). It should be noted, however, that not all oral pronouncements are meant to have immediate binding effect. See, e.g., Williams, 295 Ga. at 114.

change that, and instead will only delay the entry of the written order normally required to appeal the contempt ruling. See In re Thomas, 134 Ga. App. 728, 728 (215 SE2d 735) (1975) (dismissing an appeal taken from an oral contempt ruling before the written order was entered). And if in the meantime any sanction or purge condition imposed is satisfied, an appeal filed after the recusal motion is denied and a written contempt order is entered may be dismissed as moot. See, e.g., Herring v. Herring, 236 Ga. 43, 44 (222 SE2d 331) (1976).

Furthermore, meritless or frivolous recusal motions do not, in our view, pose a serious risk of disrupting the litigation process. Such motions are typically either untimely or facially insufficient and thus can and should be denied immediately by the trial judge. See USCR 25.3; Gray v. Manis, 282 Ga. 336, 337 (647 SE2d 588) (2007). Indeed, as we hold below, the trial judge could have promptly denied Mondy's recusal motion as facially insufficient. Some may worry that trial judges presented with a motion to recuse will simply disqualify themselves voluntarily without evaluating the validity of the motion, with the effect of delaying the case until a new judge can be assigned. But that would be a dereliction, as "'[i]t is as much the duty of a judge not to grant the motion to recuse when the motion is legally insufficient as it is to recuse when

the motion is meritorious.'" Henderson v. McVay, 269 Ga. 7, 8 (494 SE2d 653) (1998) (citation omitted).[7] In addition, as we have explained before, see Horn, 294 Ga. at 473, there are other remedies for recusal litigation that is frivolous or interposed to delay or harass. See, e.g., OCGA § 9-15-14 (authorizing awards of attorney fees and litigation costs); USCR 25.1 (addressing recusal motions that are untimely or that would delay the proceeding); Georgia Rule of Professional Conduct 3.1 (prohibiting attorneys from taking an action that serves only to harass and delay a trial).

Even if a recusal motion is determined to be sufficient on its face and thus must be assigned to another judge for hearing and decision, with the delay that referral will cause (but with the oral contempt ruling still in effect), it may be discovered that the facially valid allegations were invented or unsupported by actual evidence. In that event, remedies including an award of attorney fees and litigation costs may well be appropriate. See OCGA § 9-15-14.

But what if the motion to recuse *has merit* — what if the judge who

---

[7] Of course, a judge who at any point in a proceeding determines that he cannot be impartial — including because of an antagonistic relationship with a party or party's counsel — has an ethical duty to recuse himself voluntarily, whether or not a proper recusal motion has ever been filed. See Gude, 289 Ga. at 50.

announced an oral ruling is (or reasonably appears to be) partial or prejudiced and therefore has no business continuing to preside over the case? See Georgia Code of Judicial Conduct Rule 2.11 (A) (1). What if, for example, a party defending himself at a contempt hearing turns around and accuses the judge of prejudice, and the judge actively defends himself and then orally holds the accusing party in contempt? Cf. Post, 298 Ga. at 256-258 (explaining that argument over recusal issues "may draw the judge into presenting his side of the story, which in turn may create a perception that the judge is an advocate or hostile witness rather than an impartial adjudicator in the case," requiring disqualification).

It may be that most motions to recuse judges lack merit, but USCR 25.3 is designed to ensure that a meritless motion accusing a trial judge of prejudice or partiality will be rejected — that is, a formal determination will be made that the judge remains ethically qualified to preside over the case — *before* the judge continues to act upon the merits of the case. That is the best way to promote confidence in the challenged judge's decisions going forward. See Batson-Cook Co., 291 Ga. at 114 (emphasizing that "[j]udicial integrity is 'a state interest of the highest order' because the power and prerogative of a court to resolve

disputes rests upon the respect accorded by citizens to a court's judgments which, in turn, depends upon the issuing court's absolute probity" (citation omitted)). The USCR 25.3 process is also the best way to ensure that cases will not need to be substantially relitigated, because if it is promptly determined that a recusal motion has merit and the challenged judge must be disqualified, the case can continue before a newly assigned, impartial judge, rather than having everything that happened after the recusal motion was filed deemed void when the recusal claim is determined to have merit only later on appeal. See Propst, 288 Ga. at 864 ("[A] line of appellate decisions holds that, if a party files a motion to recuse a trial judge and the motion is denied, but it is later determined that the judge should have been disqualified to act in the case, all proceedings after the filing of the motion to recuse are 'invalid and of no effect.'" (citation omitted)).

For these reasons, Magnolia's concerns about unfounded motions to recuse being filed between an oral contempt ruling and a written order memorializing that ruling are insufficient to justify an exception to the specific directive of USCR 25.3: "When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act

upon the merits of the matter . . . ." Assuming Mondy's motion to recuse was properly presented to the trial judge, the judge had a clear legal duty to temporarily cease acting upon the merits of the contempt proceeding, and the judge therefore erred in entering the contempt order before the recusal motion had been decided. The Court of Appeals' contrary holding in Division 1 of its opinion is disapproved.

5. Our conclusion that the trial court *erred* by not complying with USCR 25.3 does not resolve this case, however, because we must still decide the *consequence* of that error. As just discussed, it is well established that if a motion to recuse a trial judge is determined to have merit — if it is decided that the challenged judge could not ethically or legally preside over the case — then all proceedings following the filing of the motion are deemed void, and the case must be reassigned to a qualified judge and restarted from the point the recusal motion was filed. See, e.g., Propst, 288 Ga. at 864; Gray v. Barlow, 241 Ga. 347, 348 (245 SE2d 299) (1978) (holding, in a case before the adoption of USCR 25, that where it was determined on appeal that the trial judge was disqualified to act in the proceeding, "[a]ll further proceedings [after the disqualification issue was raised] were therefore nugatory and the injunctive

28

order is vacated"); <u>Allen</u>, 102 Ga. at 622 ("From whatever source the disqualification to preside in a cause may arise, the effect when such disqualification *exists* is to devest jurisdiction, and the action taken is coram non judice, and void." (punctuation omitted; emphasis supplied)). The failure of a trial judge to comply with the procedures set forth in USCR 25 is not, however, a determination that a reason for the judge's disqualification actually exists so that the judge must be recused.

Although we have found no precedent exactly on point, in the analogous situation in <u>Post</u> where the challenged trial judge had violated USCR 25.3 by erroneously denying motions to recuse him as untimely or facially insufficient, rather than referring the motions to another judge for decision as the rule requires, we did not simply vacate all of the proceedings after the recusal motion was filed — three years of proceedings including a multi-defendant murder trial, convictions, and motions for new trial. See <u>Post</u>, 298 Ga. at 241, 253. Instead, we focused on the result that compliance with the rules would produce. If, as was the situation with the recusal motions filed by two appellants (Fripp and Brown), the challenged judge would necessarily be disqualified based upon compliance with the rules, due to the record that already existed, then all

29

proceedings following the recusal motions had to be vacated and the case as to those appellants restarted from that point before a newly assigned judge. See id. at 258.[8]

But where, as was the situation with the recusal motion filed by appellant Post, the trial judge's disqualification would not necessarily be required had the rules been followed, but rather would depend on how the judge to whom the recusal motion should have been referred decided the motion after holding a hearing and evaluating the evidence rather than taking all of the allegations in the motion as true, we did *not* vacate everything that happened to Post after his motion was filed. See Post, 298 Ga. at 253. Instead, we remanded the case to be assigned to another judge to decide the motion in compliance with USCR 25.3, after which two things could happen. If the other judge *granted* the recusal motion, ruling that the trial judge was disqualified, then the proceedings after the motion was filed would be void and Post's case would need to be

---

[8] This Court similarly held in 1935 that where a trial judge refused to consider a motion to disqualify him on statutory grounds due to an alleged pecuniary interest in the case, and we then determined on appeal that the judge was in fact disqualified, "[t]he error in refusing to entertain the motion rendered all further proceedings nugatory." Gaskins v. Gaskins, 181 Ga. 124, 125 (181 SE 850) (1935). Although Gaskins was decided long before the adoption of the Uniform Rules of the Superior Court and the Code of Judicial Conduct, its approach is consistent with the one we take today: a trial judge's failure to properly address a *meritorious* recusal motion will result in the vacatur of all proceedings that followed the presentation of the motion.

assigned to a new judge to continue from that point; but if the other judge *denied* the recusal motion, ruling that the trial judge was qualified to preside over Post's case, the proceedings after the motion was filed would not be voided. See Post, 298 Ga. at 253. See also Gillis v. City of Waycross, 247 Ga. App. 119, 122 (543 SE2d 423) (2000) (after holding that the trial judge erred in denying recusal motions as untimely or legally insufficient and then presiding over the trial of the case, remanding the case for the recusal motions to be decided by another judge in accordance with USCR 25.3, with the judgment on the jury's verdict being reinstated if the other judge denied the recusal motions but with all proceedings after the recusal motion was filed being vacated if the other judge granted the recusal motions); Central of Ga. R. v. Lightsey, 189 Ga. App. 44, 45 (374 SE2d 787) (1988) (same).

In the case now before us, the trial judge's error was in not deciding whether Mondy's recusal motion was timely and legally sufficient on its face before entering the contempt order. It would make little sense to impose a more draconian remedy for that error of omission (*failing to decide* whether the recusal motion was facially valid) than for the error of commission by the trial judge in Post (*deciding incorrectly* that the recusal motion was facially invalid).

31

Indeed, this Court can make the omitted decision as readily as the trial judge could have made it, because the decision involves a question of law that an appellate court reviews de novo in any event. See Batson-Cook Co., 291 Ga. at 119.

That decision is straightforward in this case. Mondy's motion to recuse was based entirely on the trial judge's factual and legal rulings at the contempt hearing, which are not a proper basis for recusal. Judicial rulings adverse to a party are not disqualifying, as "the alleged bias must stem from an extra-judicial source and result in an opinion based on something other than what the judge learned from participating in the case." Henderson v. McVay, 269 Ga. 7, 8 (494 SE2d 653) (1998). And even looking past the motion to Mondy's affidavit, all that is added are his opinions about the judge's tone and facial expressions during the hearing, which are equally insufficient, and some allegations about the judge's rulings and similar tone in prior cases, which are both untimely and insufficient. See USCR 25.2 ("Allegations consisting of bare conclusions and opinions shall not be legally sufficient to support the motion or warrant further proceedings."); USCR 25.1 ("Filing and presentation to the judge shall be not later than five (5) days after the affiant first learned of the alleged grounds for

32

disqualification . . . .").  See also <u>Batson-Cook Co.</u>, 291 Ga. at 121 (explaining that the facts of the affidavit "must be considered from the perspective of a reasonable person rather than from the perception of interested parties"); <u>Kirkland v. Kirkland</u>, 285 Ga. App. 238, 239 (645 SE2d 626) (2007) (holding legally insufficient an affidavit alleging that the judge's "tone of voice and facial expressions" showed animosity, because the "conclusory characterization [of the party moving for recusal] does not demonstrate an extrajudicial bias of a nature and intensity that would interfere with an impartial exercise of judgment"); <u>Woodham</u>, 335 Ga. App. at 129 (holding that a recusal motion was untimely to the extent it was based on information known to the party more than five days before the motion was filed, although it was timely as to grounds allegedly learned within the five-day period set by USCR 25.1).

Thus, had the trial judge complied with USCR 25.3 by temporarily ceasing to act upon the merits of the matter and immediately determining the facial validity of Mondy's recusal motion, the judge properly would have denied the motion, after which the judge could resume action on the case, including entering the contempt order — and we would have affirmed the judge's ruling

33

on the recusal motion.[9] We cannot say that the trial judge's error caused Mondy any harm, and we therefore reach the same final result as the Court of Appeals did in Division 1 of its opinion.[10]

Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs specially, and Boggs, J., who concurs in judgment only.

---

[9] We note that in McRae v. Hogan, 317 Ga. App. 813 (732 SE2d 853) (2012), the Court of Appeals suggested a similar approach to this sort of USCR 25.3 error, explaining that the appellate court "might review the motion to recuse de novo and determine whether to uphold the [trial judge's] order entered pending the motion." Id. at 816-817. Rather than doing that, the Court of Appeals went on to infer from the trial judge's voluntary recusal after the judge entered the order at issue that the judge had "granted [the] motion to recuse and had reasonable grounds to do so," and thus treated the recusal motion as properly granted. USCR 25.7 says plainly, however, that "[a] voluntary recusal shall not be construed as either an admission or denial to any allegations which have been set out in the [recusal] motion." So the inference drawn in McRae was unwarranted, as would be any such inference drawn from the trial judge's voluntary recusal after entering the contempt order at issue in this case.

We also note that the situation in this case is different from that in Horn, where the challenged trial judge lost his authority to rule on a pending contempt motion not only because a motion to recuse him had been filed but also because he had referred the recusal motion to another judge for decision and the other judge had not yet decided the motion, so the case had not been either reassigned to the trial judge or assigned to a new judge. See id. at 473. See also Evans v. Williams, 341 Ga. App. 226, 228 (799 SE2d 362) (2017) (addressing a similar situation).

[10] We did not grant certiorari to review the other portions of the Court of Appeals' opinion, which stand affirmed.

HUNSTEIN, Justice, concurring specially.

The majority opinion hinges on the factual assumption that the trial court intentionally entered its written order holding Mondy in contempt while knowing the recusal motion was pending. The record is silent on this matter, however, and we simply cannot presume that the trial court did not follow the law. Furthermore, the majority faults the trial court for failing to follow the plain language of Uniform Superior Court Rule ("USCR") 25.3, but it was *Mondy's* dilatory tactics that caused the alleged error. Indeed, Mondy failed to file and present his recusal motion to the trial court as required by USCR 25.1 and, because of this, I cannot join the majority in finding trial court error. That being said, I agree with the ultimate conclusion reached by the majority.

The record shows that, in September 2015, following Mondy's alleged violation of the state trial court's injunction, Magnolia filed its "Third Motion for an Order to Show Cause why [Langford and Mondy] Should Not be Held in Contempt of Court." Mondy filed a lengthy response to the contempt motion

on October 28, 2015; however, despite knowledge of alleged grounds for disqualification of the trial judge prior to the contempt hearing, Mondy did not file a recusal motion. At the November 23, 2015 hearing, the trial court heard argument on all of Magnolia's pending motions,[11] including the third contempt motion. At no time during the hearing did Mondy object to the judge presiding over the contempt hearing or request the judge recuse himself.

After receiving witness testimony and argument from counsel, the trial court verbally and summarily granted Magnolia's third motion for contempt; the court informed the parties that they would have ten days to submit a brief on the issue of attorney fees based on the finding of contempt and that a subsequent hearing on that issue would be held in January 2016. On November 30, 2015, five business days after the trial court's verbal ruling, Mondy *filed* with the clerk of court his recusal motion and an accompanying affidavit, contending that the judge was incapable of remaining impartial in the case because he harbored a personal bias toward Mondy. On December 15, 2015, at 3:52 p.m., the trial

---

[11] The record shows that the trial court also heard argument on Magnolia's "Second Motion for Contempt" against Mondy and Langford, as well as Magnolia's motion to compel discovery.

2

court entered its lengthy written order holding Mondy in contempt. Approximately 40 minutes later, at 4:32 p.m., the judge filed a second order wherein he voluntarily recused himself from the case.[12]

As an initial matter, the record shows that Mondy knew that a hearing on Magnolia's motion for contempt was going to be heard and ruled upon by a judge whom he believed to have a long-held personal bias against him. Despite this, Mondy failed to file (and present the court with) a recusal motion prior to the contempt hearing. It was Mondy's choice to proceed with the contempt hearing with a judge he believed to be biased and, based on this, I believe that Mondy likely waived his recusal claim altogether. See State v. Hargis, 294 Ga. 818 (756 SE2d 529) (2014). However, because the plain language of USCR 25 should completely control our analysis, I will presume that this issue is preserved.[13]

---

[12] There is no indication that the trial court granted Mondy's recusal motion.

[13] It is important to emphasize the portion of Division 4 (d) of the majority opinion explaining that when a trial court pronounces an oral ruling from the bench, it has full force and effect and is binding upon all parties. Here, the trial court granted Magnolia's motion to hold Mondy in contempt from the bench, a ruling with which Mondy had to comply. The only way in which Mondy could have prevented the allegedly biased trial judge from presiding over and ruling on Magnolia's contempt motion was to file (and present) his recusal motion laying out the years of the trial

3

Mondy's appeal fails because he did not strictly comply with the requirements of USCR 25. We construe court rules in the same manner as statutes, by looking to the rule's plain language and giving the words their plain and ordinary meaning. See Undisclosed LLC v. State, 302 Ga. 418 (2) (a) (807 SE2d 393) (2017) (evaluating plain meaning of USCR 21); Foster v. Gidewon, 280 Ga. 21 (1) (622 SE2d 357) (2005) (evaluating plain meaning of USCR 17.1); Cuzzort v. State, 271 Ga. 464 (1) (519 SE2d 687) (1999) (evaluating plain meaning of USCR 3.1). When we construe such authority on appeal, our review is de novo. Hankla v. Postell, 293 Ga. 692, 693 (749 SE2d 726) (2013). With these familiar principles in mind, I turn to the relevant court rules.

USCR 25.1, which applies to a party filing a motion to recuse, states as follows:

> All motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be timely filed in writing and all evidence thereon shall be presented by accompanying affidavit(s) which shall fully assert the facts upon which the motion is founded. *Filing and presentation to the judge* shall be not later than five (5)

judge's alleged long-held personal bias toward Mondy *prior to the contempt hearing*. Once the hearing was held and the trial court pronounced its ruling from the bench, Mondy could have asked the court to reconsider its ruling, but the filing of the motion to recuse could not have *prevented* the judge from deciding whether to hold Mondy in contempt because the judge had already ruled on that issue.

4

days after the affiant first learned of the alleged grounds for disqualification, and not later than ten (10) days prior to the hearing or trial which is the subject of recusal or disqualification, unless good cause be shown for failure to meet such time requirements. In no event shall the motion be allowed to delay the trial or proceeding.

(Emphasis supplied.) Id. USCR 25.3 speaks to what the trial court must do upon being *presented with* a recusal motion. This rule states in relevant part:

*When a judge is presented* with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse.

(Emphasis supplied.) Id.

Paying short shrift to the use of the word "present" throughout USCR 25, the majority briefly acknowledges that the plain language of the rule requires that a recusal motion must be both filed *and* presented to the judge, but then, instead of interpreting and applying the plain language of the rule, the majority focuses its analysis solely on Mondy's *filing* of the recusal motion. This,

5

however, renders the "filing and presentation" language of USCR 25.1 and the "when presented" language of USCR 25.3 meaningless, an outcome we recently emphasized must be avoided.[14]  See In the Interest of K. S., 303 Ga. 542 (814 SE2d 324) (2018).  Furthermore, the majority's failure to address the presentment language runs afoul of Georgia's case law enforcing strict adherence to the requirements of USCR 25.1 and 25.3 in cases where a party has sought a trial judge's recusal.  See Daker v. State, 300 Ga. 74 (3) (792 SE2d 382) (2016); Horn v. Shepherd, 294 Ga. 468 (2) (754 SE2d 367) (2014); State v. Hargis, 294 Ga. 818 (1) (756 SE2d 529) (2014); Henderson v. State, 295 Ga. 333 (1) (c) (759 SE2d 827) (2014); Mayor & Aldermen of the City of Savannah v. Batson-Cook Co., 291 Ga. 114 (2) (728 SE2d 189) (2012).  See also Graybill v. Attaway Constr. & Assocs., 341 Ga. App. 805 (4) (802 SE2d 91) (2017);

---

[14] Rather than address "presentment" as a distinct and separate requirement of USCR 25 — as the majority recognizes it is — they avoid it, fearing that engaging in such an analysis would upset trial judges and unleash zombie-like service of recusal motions on judicial branch officials; however, these concerns are groundless and simply shirk our duty to interpret and apply the plain language of the law. Moreover, the majority's decision to side step this analysis because the parties did not argue for or against such an interpretation does not control our analysis.  See State v. Hudson, 303 Ga. 348, 353 n. 5 (812 SE2d 270) (2018) (explaining that "this Court's interpretation of the Georgia Code is not restricted to the way the parties argue we should read the pertinent statutes or the way lower courts have read them").

6

<u>Ballweg v. Ga. Dept. of Human Svcs.</u>, 336 Ga. App. 372 (1) (785 SE2d 47) (2016); <u>Woodham v. Atlanta Dev. Auth.</u>, 335 Ga. App. 126 (2) (779 SE2d 116) (2015).  Failing to strictly enforce the requirements of USCR 25 in this case in order to wax poetically about an academic and factual quagmire will only serve to confuse the bench and bar regarding their obligation to strictly comply with the rule's requirements.

Turning to the language at issue, USCR 25.1 requires that a recusal motion be both filed *and* presented to the trial judge; because filing and presentation are set forth in the conjunctive, compliance with both is required, see <u>Reliance Equities, LLC v. Lanier 5, LLC</u>, 299 Ga. 891 (1) (792 SE2d 680) (2016), and, logically, they must mean different things.  USCR 25.3 states that a trial court must temporarily cease acting upon the merits of the case and *immediately* determine the timeliness and legal sufficiency of the motion *when presented* with the recusal motion.  Id.  Though USCR 25 does not provide a definition of "present" or "presentation," the Oxford English Dictionary defines "present" as: "[t]o bring or lay before a court, magistrate, or person in authority, for consideration or trial; to make presentment of," "to submit (a fact, request,

7

complaint, etc.); (also) to bring (an offence, fault, problem, etc.) formally under the notice of the proper authority, for enquiry or action," and "[t]o hand over formally (a document, petition, order, bill, account, etc.) for payment, acceptance, or other action." Oxford English Dictionary, OED Online (May 17, 2018). It further defines "presentation" as "[t]he action of offering something for acceptance, esp. formally or ceremoniously; handing over, delivery; bestowal, giving." Id.

Simply put, a party must both file their recusal motion with the clerk of court *and* deliver a copy of the motion to the judge in order to trigger the judge's obligations under USCR 25.3.[15] Considering that the plain language of USCR 25.3 requires a trial judge to act *when presented* with a recusal motion, then the burden of complying with the condition precedents of filing and presentment of a recusal motion is on the *movant*, not the trial court. Any other interpretation places the onus on trial judges to continually search the docket of every case pending before them in order to know if a recusal motion has been filed, rather

---

[15] I see no need to address how a judge may be properly presented with a recusal motion, but certainly there is no shortage of means by which a judge may be served.

8

than keeping the burden where it belongs — with the *movant*.   What is more, enforcing both of these requirements will serve as a way to curtail litigants from abusing recusal motions either for the purposes of  delay or as an attempt to insert error into their case, similar to the scenario currently before us, while also ensuring that trial judges can quickly and strictly comply with their duties under the rule.

Here, while the record shows that Mondy *filed* the recusal motion with the clerk of court, the record is silent as to whether he also *presented* the motion to the judge and also silent as to when the trial judge learned of the motion. Notably, the record shows that there was a 40-minute delay between the trial court's entering of the written contempt order and its voluntary recusal.  Though the majority presumes that the trial court was aware that a recusal motion had been filed prior to entering the written contempt order, it is distinctly possible that the trial court first learned of Mondy's recusal motion *after* it entered the written contempt order.  Despite the record's thunderous silence on this factual issue, and without any explanation, the majority gives Mondy the benefit of the doubt that the trial court willfully and intentionally ignored the law, a

9

presumption that directly contradicts our normal standard of review. Cf. Johnson v. State, 302 Ga. 188, 198 (805 SE2d 890) (2017) ("We do not normally assume that an error occurred during a mere gap in a trial transcript. On the contrary, we presume that a trial court followed the law" unless rebutted by the record.). See also Dallow v. Dallow, 299 Ga. 762, 777 (791 SE2d 20) (2016) (citing Davis v. Bushnell, 245 Ga. App. 221, 223 (537 SE2d 477) (2000)) ("'(I)n the absence of a contrary showing, the trial court will be presumed to have followed the law.'"). Instead, "[a]s the appellant, [Mondy] has the burden of demonstrating error." Gallemore v. White, 303 Ga. 209, 210 (1) (811 SE2d 315) (2018). See also Rymuza v. Rymuza, 292 Ga. 98 (5) (734 SE2d 384) (2012). "A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed." Boles v. Lee, 270 Ga. 454, 455 (511 SE2d 177) (1999). Because we must assume that the judge followed the law, and because the record is absolutely silent as to whether Mondy presented the recusal motion to the judge, I cannot conclude that the trial court erred.

Ignoring Mondy's burden, the majority explains that the presentment requirement was likely met by the clerk of court who was required to "promptly upon filing"[16] furnish a copy of the motion to the trial court. USCR 6.1. This assumption, however, is problematic. First, the plain language of USCR 25 specifically speaks to the obligations of the affiant/movant to file *and* present the motion to the trial judge; as discussed above, an attorney's responsibility to comply with both requirements cannot be accomplished by simply providing a copy of the motion to the clerk's office. Second, because a movant must both file and present his or her motion to the trial judge, USCR 25 effectively requires that the judge be provided with actual notice of the recusal motion — which is personal to and directed at the judge — something that does not occur with the mere filing of a motion with the clerk of court. Certainly, in a circuit as large and busy as DeKalb County, the "prompt" delivery of a pleading from the clerk's office to a judge may not occur for a week. In the meantime, without actual notice of the filing, a judge might continue to rule on other pending

---

[16] Ironically, the majority is willing to interpret the meaning of "promptly" in a rule not before this Court but refuses to engage in any analysis as to the meaning and import of the presentment language in either USCR 25.1 or 25.3.

11

motions. Once again, the best and only way to safeguard against such chaos is to enforce the plain language of the rule, which requires a party file a recusal motion *and* present a copy of that motion to the judge within the strict time requirements laid out in USCR 25.1.

Given USCR 25's purpose of promoting judicial economy, see <u>Hargis</u>, supra, requiring the movant provide the trial court with actual notice via service of the motion, rather than relying on constructive notice through a clerk's office, allows trial judges to quickly and strictly comply with their duty under USCR 25.3, and keeps the burden of ensuring that the motion is timely on the movant. Because Mondy did not timely file *and* present his motion to the trial court, I would hold that the trial court did not err and affirm.

Decided June 4, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 141.

Michael O. Mondy, pro se.

Nelson Mullins Riley & Scarborough, Erika C. Birg, Peter L. Munk, for appellee.