**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 27, 2025**

# In the Court of Appeals of Georgia

A25A0764, A25A0796. JOHNSON, JR. et al. v. ADCOCK et al.
(two cases).

DOYLE, Presiding Judge.

In these related appeals, Gwynn Kelley "Mace" Johnson, Jr., and Lee Anne Adcock Johnson (collectively, "Appellants") appeal from multiple trial court orders entered in the underlying case, which involves an ongoing dispute between Appellants and Cathy Adcock and Clint Adcock (collectively, "Appellees") over the operation of family businesses. For the reasons that follow, we affirm in part, vacate in part, and remand with direction.

*Factual and Procedural Background*

In a prior lawsuit, the parties litigated issues relating to the ownership and operation of three family businesses: (1) Sunbelt Plantations, Inc., (2) AAA Outdoor

Advertising, Inc., and (3) Adcock Family Partnership (collectively, "family businesses"). The litigation resulted in a settlement agreement ("Global Release") governing the operation of the family businesses going forward. Despite the Global Release, disputes over the family businesses continued. In response, Appellees filed the underlying lawsuit against Appellants, which remains pending below.[1] Over the course of the litigation, the parties filed multiple motions requiring court intervention, and the trial court repeatedly addressed issues concerning discovery and compliance with court orders. Appellants now challenge several of the trial court's rulings on appeal.

The procedural history of this case is convoluted. In April 2023, the parties entered into a consent order that granted equitable relief to Appellees. The consent order required Appellants to pay Appellees' salaries pursuant to the Global Release and to otherwise allow access to the family businesses, including benefits, meetings, and participation in their management. Nevertheless, the litigation continued, and in August 2023, Appellees filed a motion to compel based on Appellants' failure to provide complete responses to interrogatories and requests for production of

---

[1] The complaint is not in the record, but it appears that the lawsuit was filed in January 2023.

documents. The parties entered into another consent order in October 2023 to resolve the discovery dispute. According to the express terms of the consent order, the family businesses were to provide "any documents" requested by Appellees within 15 days of a request. The consent order further provided that document requests could be emailed to Appellant Mace Johnson and that "[Appellants] shall cooperate to ensure that the business entities provide the documents as set forth [in the consent order]." The consent order also required Appellants to "provide full and complete sworn responses" to certain, specified interrogatories. In February 2024, Appellees filed a motion for contempt and sanctions pursuant to OCGA § 9-11-37 after Appellants failed to produce documents or supplement interrogatory responses as required by the consent order.

In April 2024, the trial court held a hearing during which the parties presented an agreement that they had reached to resolve an ongoing dispute about equitable relief.[2] During the hearing, the parties agreed to various terms addressing Appellees' access to family business meetings, salaries, and fringe benefits, among other terms. The parties agreed to hold weekly meetings to discuss the family businesses in detail,

_____

[2] It is not clear from the record what filing precipitated the April 2024 hearing.

all parties would receive equal fringe benefits, , and the previously determined salaries would remain in effect and be paid to Appellees directly. After extensive discussions and debate regarding additional terms, both on and off the record, counsel reached an agreement.[3] Counsel for Appellees then prepared a consent order setting forth the terms agreed to at the hearing; however, Appellees declined to execute the agreement, instead disputing some of the previously agreed upon terms.

In May 2024, Appellees filed a motion to enforce settlement agreement and motion for contempt based on Appellants' refusal to execute or comply with the terms of the agreement reached at the April 2024 hearing. Appellees also argued that Appellants continued to refuse to provide discovery responses and documents. Appellees requested attorney fees and costs, but did not specify a statutory basis for their request.

In June 2024, Appellants filed a motion for temporary injunction and sanctions, arguing that Appellees had violated the terms of the Global Release by holding family business meetings and attempting to change the board of directors. In relief,

---

[3] Once the parties announced that they had reached an agreement, the judge confirmed that Appellants' counsel did not have anything else to add, and then stated, "[e]verybody speak now or forever hold your peace." Neither party voiced objections at that time.

Appellants sought a temporary restraining order and interlocutory injunction to maintain the status quo under the terms of the Global Release and to prohibit Appellees from taking any action in violation of the Global Release "in the future."

In July 2024, the trial court held a hearing on Appellees' motion for contempt and sanctions and motion to enforce settlement agreement, as well as Appellants' motion for temporary injunction. At the hearing, Appellant Lee Anne Johnson briefly testified and admitted that Appellants had not included others in the family business decisions as required by the Global Release. However, Lee Anne then refused to testify further.[4] Appellant Mace Johnson testified that he and his wife, Lee Anne, controlled the family businesses and that they had never held any formal meetings. He, too, admitted that he and Lee Anne had made all of the family business decisions on their own. He further admitted that he created family business documents and had access to the business records, but had not given them to Appellees. Mace testified that he was still working on some of the discovery productions, and that he had not supplemented his interrogatory responses. Appellees requested attorney fees in

---

[4] When Lee Anne refused to testify, her counsel consented to the trial court drawing a negative inference from that refusal.

connection with their motions, but did not have detailed information about the fees available at the time of the hearing.

The trial court granted Appellees' motion for contempt and motion to enforce settlement agreement, and stated that attorney fees would be awarded in an amount to be determined at a future hearing. The court also denied Appellants' motion for interlocutory injunction. Appellants timely filed a notice of appeal from these rulings, which was docketed in this Court as Case No. A25A0764.

In August 2024, Appellees filed a second motion for contempt and sanctions, arguing that Appellants continued to violate the court's orders, including the: (1) April 2023 consent order for equitable relief by continuing to make business decisions without Appellees, (2) October 2023 consent order by failing to produce business records, and (3) order enforcing the settlement agreement by refusing to pay salaries or fringe benefits and for paying Appellees dividends with a non-negotiable check. Appellees also requested reasonable attorney fees and costs but did not identify a statutory basis for their request.

In September 2024, Appellees filed an amended motion to dismiss and clarify the appeal filed by Appellants in Case No. A25A0764. Appellees argued that the

appeal was premature and sought to appeal orders not subject to direct appeal, and asked the trial court to determine whether a supersedeas bond was required.

Shortly after, the trial court held a hearing on Appellees' outstanding requests for attorney fees, second motion for contempt, and motion to dismiss and clarify the appeal. At the hearing, counsel for Appellees testified regarding his experience, hourly rates, and the work performed on various motions. In addition to testifying, counsel submitted exhibits in support of the requested attorney fees, which were admitted into evidence without any objection from Appellants.[5] Counsel was also cross-examined, during which he approximated the time spent on different tasks. However, counsel did not present the underlying billing records, and Appellants argued that without them, there was not enough evidence to support the requested fees.

During the hearing, Appellants' counsel also objected that they had not received 30 days to respond to the second motion for contempt and sanctions as required by Uniform Superior Court Rule ("USCR") 6.2. The trial court noted that a rule nisi had been issued for the hearing, but indicated that another hearing would

---

[5] The exhibits are not included in the record on appeal. However, the hearing transcript indicates that the exhibits summarized the billing records and work performed in support of the requested attorney fees.

be held if the court determined 30 days' notice was required. The hearing proceeded, and Appellee Clint Adcock testified that he had not been paid a salary or fringe benefits as ordered; he appeared for weekly family business meetings but Appellants would not speak to him; he had not been consulted on any family business decisions; Appellants wrote him a dividend check that could not be cashed; and Appellants were not following the Global Release or court orders. Appellees also requested a supersedeas bond, and Appellants argued that they were entitled to 30 days to respond to that request as well.

After the hearing, the trial court granted the second motion for contempt and sanctions, declined to dismiss the appeal, and required a supersedeas bond. More specifically, the court found that Appellants had wilfully failed to comply with multiple court orders addressing family business operations and the payment of salaries and benefits, as well as discovery. The court also concluded that Appellees had incurred "reasonable and necessary" attorney fees of $5,700 in connection with the second motion for contempt. To purge themselves of contempt, the court ordered Appellants to pay the money and attorney fees owed to Appellees. The trial court did not dismiss the appeal, recognizing that questions of jurisdiction were in the purview

of this Court, but did order a supersedeas bond in the amount of $500,000. Appellants timely filed a notice of appeal from these rulings, which was docketed in this Court as Case No. A25A0796.

*Case No. A25A0764*

1. As a threshold matter, we consider our jurisdiction over this appeal.[6] Appellants seek to appeal from three trial court orders in Case No. A25A0764: (1) the court's finding of contempt against them as outlined in a July 31, 2024 letter that was signed by the judge and filed with the clerk of court; (2) the court's August 9, 2024 order granting Appellees' motion to enforce settlement agreement; and (3) the court's August 9, 2024 order denying Appellants' motion for temporary injunction. Appellees have moved to dismiss the appeal for lack of jurisdiction, arguing that the appeal was premature and that Appellants improperly seek to appeal from rulings that are not subject to direct appeal because they are either interlocutory or require a discretionary application. We disagree.

A review of Appellants' motion for temporary injunction reveals that their motion sought to enforce the status quo for the duration of the litigation and "in the

---

[6] We are mindful of our duty to construe procedural rules liberally so as to find jurisdiction where possible and to reach the merits of an appeal. See OCGA § 5-6-30.

future." Although the motion also referenced the need for a temporary restraining order, even if a motion is "denominated as [one for] a TRO, there is no magic in nomenclature. A document is to be construed by its substance or function, rather than by its name." *MSM Poly, LLC v. Textile Rubber & Chem. Co.*, 353 Ga. App. 538, 539 (2020) (punctuation omitted). Generally, a TRO is limited to a 30-day period. See OCGA § 9-11-65(b) (a temporary restraining order "shall expire by its terms within such time after entry, not to exceed 30 days"). Comparatively, where the order is entered after a hearing and addresses the relief sought pending trial, it is more in the nature of an injunctive order rather than a TRO. See *MSM Poly, LLC*, 353 Ga. App. at 539. The court held a hearing before deciding that Appellants had failed to meet the requirements "for an interlocutory injunction," and the motion itself sought relief for the duration of the litigation and beyond. Therefore, the motion was in the nature of an interlocutory injunction, and an order denying an interlocutory injunction is subject to direct appeal. See id.; see also OCGA § 5-6-34(a)(4) ("All judgments or orders granting or refusing applications for receivers or for interlocutory or final injunctions" are subject to direct appeal); but see OCGA § 5-6-35(a)(9) (orders "granting or denying temporary restraining orders" must come by discretionary application).

Because the trial court's order denying the motion for temporary injunction is properly before us, Appellants may also seek review of any other orders rendered in the case without regard to their appealability standing alone, including the court's orders granting the motion to enforce settlement agreement and motion for contempt and sanctions. See OCGA § 5-6-34(d) ("Where an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone[.]"). And although Appellees argue that the July 31 ruling on the motion for contempt was merely a letter and not an order subject to appeal, the requirements for an order are that it is (1) memorialized in writing, (2) signed by the judge, and (3) filed with the clerk. See OCGA § 5-6-31 ("The filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of this article."); *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 772 (2018) (a ruling must be "reduced to writing, signed by the judge, and filed by the clerk" before it can be appealed); *Ga. Power Co. v. Whitmire*, 146 Ga. App. 29, 31 (1978) ("Orders are not complete until

11

filed or recorded[.]"). Here, the trial court's letter to the parties read like an order, including "grant[ing] the . . . motion for contempt and for sanctions." The letter is also signed by the judge and was filed with the clerk. Therefore, it is fairly construed as an order.[7]

Accordingly, we have jurisdiction to consider this appeal and Appellees' motion to dismiss the appeal is denied.

2. Turning to the merits, Appellants first argue that the trial court erred by holding them in contempt because there was no showing that they knowingly and wilfully failed to comply with discovery since the requested records were held by the businesses, not them as individuals. We disagree.

"Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." *Fid. Enters., Inc. v. Heyman & Sizemore*, 206 Ga. App. 602, 603 (1992) (citation omitted).

---

[7] In a subsequent ruling, the trial court indicated that the letter was not intended as an order. However, regardless of how the court later characterized the letter, the substance of a document controls over the nomenclature. See *MSM Poly, LLC*, 353 Ga. App. at 539; see also *Am. Med. Sec. Group., Inc. v. Parker*, 284 Ga. 102, 104 (2008) ("[T]he appealability of an order is determined, not by its form or the name given to it by the trial court, but rather by its substance and effect.") (punctuation omitted).

12

Likewise, "[i]n civil contempt appeals, if there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion." *In re Waitz*, 255 Ga. App. 841, 842 (2002).

Appellants cannot show that the trial court abused its discretion by finding them in contempt on the record before us, which includes admissions by Mace Johnson that the business documents had not been produced and the interrogatory responses had not been supplemented as required by the consent order. While Appellants attempt to defend their failure to produce based on the fact that they are individuals, and not the businesses from which the records were sought, the record undermines their position. Appellants exercise complete control over the family businesses, including creating, maintaining, and controlling the records that were requested in discovery. See OCGA § 9-11-34(a)(1) (in discovery, a party can request production of any records "which are in the possession, custody, or control of the party upon whom the request is served"); *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 59-60 (2024) ("Control is construed broadly in this context; it does not require that the party have legal ownership or actual physical possession of the documents at issue; rather,

documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents.") (punctuation omitted). And even if the discovery requests themselves were not sufficient to impose an obligation on Appellants to produce the business records, they also entered into a consent order specifically agreeing to produce business records to Appellees when requested. The trial court was authorized to find Appellants in contempt on these facts, and they have failed to show error.

3. Appellants next argue that the trial court erred by enforcing the settlement agreement because there was no meeting of the minds concerning key terms of the agreement, at least one term violated federal tax law, and the alleged agreement was not in writing. This argument fails as well.

"On appeal, we apply a de novo standard of review to the trial court's determination to enforce the settlement agreement." *Newsome v. Graham*, 365 Ga. App. 202, 204 (2022) (punctuation omitted). If the court holds an evidentiary hearing, its findings are reviewed under the any evidence standard, but in the absence of an evidentiary hearing, we review the evidence in the light most favorable to the nonmoving party. See *Brooks v. Ironstone Bank*, 314 Ga. App. 879, 880-81 (2012).

Here, the trial court held a hearing during which it considered several motions at the same time. The parties presented some evidence, but the evidence was not directed at the motion to enforce settlement agreement. However, even if we review the record in the light most favorable to Appellants, they cannot show error.

There is no dispute that the parties entered into an agreement as reflected by the April 2024 hearing transcript, which was entered into the record below. Appellants claim that they did not agree upon key terms of the agreement, but the record shows that the parties resolved any disputes they had over the agreement terms during the hearing. OCGA § 13-3-2 provides that "[t]he consent of the parties [is] essential to a contract," but a review of the hearing transcript shows that the parties, through counsel, consented to the agreement here. See *Brooks*, 314 Ga. App. at 880 ("Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client[.]"); see also *Commercial Union Ins. Co. v. Marco Transp. Co.*, 211 Ga. App. 844, 844-45 (1994) (an attorney may bind his client to an oral agreement where the existence of the agreement is not in dispute). The parties had a thoughtful negotiation and debated various terms throughout the hearing, ultimately reaching an agreement

15

that counsel for both sides expressly agreed to. Any suggestion otherwise is belied by the record.

Appellants briefly argue that the salary payment terms under the agreement could not be enforced because they violated federal tax law, but as noted by the trial court, Appellants provided no evidentiary support for this conclusory assertion in the court below. They have similarly failed to support this assertion on appeal. Although Appellants identify this issue in their enumerations of error, they do not elaborate on this claim or provide any citation to authority in support of this argument in their brief. Therefore, they have abandoned this issue on appeal. See Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); see also *Grimes v. State*, 362 Ga. App. 242, 245 (2022) (deeming an enumerated error abandoned when appellant's "opening brief contain[ed] no argument or citation of authority in support of the enumeration").

In addition, we disagree that the agreement had to be in writing. Instead, the trial court was authorized to enforce "the oral agreement reflected by the transcript of the [hearing] since oral settlement agreements are enforceable if their existence is

16

established without dispute." *Newsome*, 365 Ga. App. at 204-05 (punctuation omitted). Appellants suggest that there was a dispute below as to the existence of an agreement, but the transcript refutes that suggestion. "Consequently, [Appellees'] motion to enforce the settlement agreement was properly granted under the circumstances regardless of whether [Appellants] signed the document memorializing the terms of the oral agreement." Id. at 205 (punctuation omitted).

Finally, to the extent Appellants contend that the trial court erred by finding that they wilfully failed to execute or comply with the April 2024 agreement, again, the record belies their position. There is no dispute that Appellants did not comply with the terms of the agreement or execute the written consent order. They have freely admitted their failure to do so, arguing instead that there was no enforceable agreement. Appellants advance this argument even though the hearing transcript shows that an agreement was reached with terms agreeable to both parties. Appellants cannot show error on these facts.

4. Appellants also argue that the trial court abused its discretion by denying their motion for temporary injunction because Appellees took actions in violation of the Global Release, causing them harm. We disagree.

Whether to grant a request for interlocutory injunctive relief is within the trial court's discretion. See OCGA § 9-5-8 ("The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case."); *Kinard v. Ryman Farm Homeowners' Ass'n*, 278 Ga. 149 (2004) (reviewing an interlocutory injunction order for an abuse of discretion). "The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case." Id. (punctuation omitted). When deciding whether to issue an interlocutory injunction, the court should consider whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of [its] claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*City of Waycross v. Pierce County Bd. of Comm'rs*, 300 Ga. 109, 111 (2016) (punctuation omitted).

Appellants argue that the trial court failed to address these interlocutory injunction factors; however, the order reveals that the court did consider the pertinent factors in concluding that Appellants failed to show that they were entitled to injunctive relief.

Moreover, Appellants fail to acknowledge that the trial court's ruling relied heavily on a finding that they had unclean hands.

> 'Unclean hands' is a shorthand reference to OCGA § 23-1-10, which states, 'He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.' OCGA § 23-1-10 embodies both the 'unclean hands' doctrine and the concept that one will not be permitted to take advantage of his own wrong. However, relief is precluded only if the inequity so infects the cause of action that to entertain it would be violative of conscience. The inequity must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.

*Bank of New York Mellon v. Edmondson*, 344 Ga. App. 823, 826 (2018) (punctuation omitted).

Here, the trial court denied Appellants' motion based on a finding that they could not seek equitable relief against Appellees for violating an agreement that

19

Appellants themselves had failed to follow. In particular, the court found that Appellants had not maintained the status quo under the Global Release, nor had they treated the terms as binding or otherwise complied with the agreement. Therefore, the court concluded that Appellants were not entitled to the equitable relief they requested. Appellants have not challenged these findings on appeal. In fact, although Appellants rely on the purported requirements of the Global Release to support their argument, they did not include the release in the record for our consideration on appeal. See Court of Appeals Rule 25(d)(1)(i) (enumerated errors must be supported by specific references to the record); see also *Colclough v. Dep't of Human Servs.*, 367 Ga. App. 567, 570 (2023) ("It is the appellant's burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal.") (punctuation omitted). On the record before us, Appellants cannot show that the trial court abused its discretion by denying their motion.

*Case No. A25A0796*

5. In Case No. A25A0796, Appellants first challenge the trial court's October 8, 2024 order holding them in contempt and awarding Appellees attorney fees.

20

Appellants contend that the court's award of attorney fees was error because the award was not supported by sufficient evidence.

Pretermitting the sufficiency of the evidence presented in support of the requested attorney fees, we are unable to conduct a meaningful review of the attorney fee award set forth in the trial court's October 8, 2024 order because the court did not specify a statutory basis or make the requisite findings of fact to support the award.

"[A]ttorney fees are awarded only where some express authority or power exists. No authority exists to award attorney fees merely because the action is for contempt." *Minor v. Minor*, 257 Ga. 706, 709 (1987); see also *Albers v. Albers*, 376 Ga. App. 267, 270 (2025). Thus, we must first determine whether there was an independent statutory basis for the trial court's award of fees.

> To determine the statutory basis for a trial court's award of attorney fees, we look to whether the trial court's order cites a statutory basis for the award or tracks any statutory language, whether the party seeking attorney fees specified the statutory basis for awarding the fees, and whether the record reveals the basis for the award.

*Moore v. Hullander*, 345 Ga. App. 568, 570 (2018) (punctuation omitted).

Here, the trial court awarded Appellees $5,700 in attorney fees in connection with their second motion for contempt, but Appellees' second motion for contempt did not request attorney fees under any specific provision, nor did the court's order specify a statutory basis for the award. The court stated only that the attorney fees requested were "reasonable and necessary" based on "[Appellants'] conduct and[] in an effort to resolve the issues and to ensure compliance with the court orders." This language suggests that the fee award was treated as a request under OCGA § 9-15-14(b).[8]

Under OCGA § 9-15-14(b), a court may award "reasonable and necessary" attorney fees if

> an attorney or party brought or defended an action . . . that lacked substantial justification or . . . was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures.

---

[8] Appellees sought fees pursuant to OCGA § 9-11-37 in an earlier motion for contempt and sanctions, but that is not the motion before us, nor does OCGA § 9-11-37 apply to attorney fee awards unrelated to discovery.

However, "[w]hen a trial court awards fees under [OCGA § 9-15-14], it must make express findings of fact and conclusions of law as to the statutory basis for the award." *Viente v. Madden*, 362 Ga. App. 264, 266 (2022) (punctuation omitted). This "means the court must not only specify the conduct upon which the award is made, but also specifically find that the conduct lacked substantial justification, was brought for the purpose of delay or harassment, or unnecessarily expanded the proceeding. Merely finding that a litigant behaved improperly is not enough." Id. (citation and punctuation omitted). Applying these standards, a trial court order finding that an attorney fee award was warranted based only on a party's wilful contempt as detailed in the court's order is insufficient and amounts to an abuse of discretion. See id. at 267.

For these reasons, we vacate the trial court's October 8, 2024 order awarding attorney fees of $5,700,[9] and remand this case for the trial court to enter a new order that includes the necessary findings of fact and conclusions of law as to the statutory

---

[9] The trial court's October 8 order also references a prior award of attorney fees for $18,466.70 related to discovery sanctions and the motion to enforce settlement agreement, which Appellants were required to pay before they could purge themselves of contempt. However, the underlying order awarding $18,466.70 in attorney fees is not included in the record or otherwise identified by Appellants as an order on appeal. Therefore, it presents nothing for this Court to review.

basis for the award and an explanation of how the court arrived at the amount it ultimately awards. See *Viente*, 362 Ga. App. at 268; *Bailey v. Maner Builders Supply Co., LLC*, 348 Ga. App. 882, 884 (2019) ("When the trial court fails to make the required findings specifying the conduct upon which the award was based, the fees award must be vacated and the case remanded for reconsideration.") (punctuation omitted).

6. Appellants next argue in related enumerations that the trial court erred by granting the second motion for contempt because they were not knowingly and wilfully noncompliant with the court's earlier orders requiring discovery and the payment of salaries and benefits from the family businesses. Appellants essentially argue that the court erred by conflating the individual defendants with the businesses. We disagree.

First, for the reasons stated in Division 2, the record supports the trial court's findings of contempt relating to Appellants' failure to produce business records.

Moreover, the record reveals that the parties entered into a consent order in April 2023 requiring the payment of salaries and benefits to Appellees under the Global Release, and again agreed during the April 2024 hearing that Appellants would

pay Appellees salaries and benefits. The April 2024 agreement was later enforced by court order. Despite these orders and Appellants' knowledge of what they required, Appellants did not comply. Appellants now try to shield themselves from their admitted failure to follow the orders by arguing that they are mere individuals separate and distinct from the businesses that were ordered to pay salaries and benefits. However, this representation is undermined by evidence in the record establishing that for all intents and purposes, Appellants were the family businesses. Mace Johnson testified that Appellants made all the family business decisions; everything ran through them. It is disingenuous for Appellants to suggest that they cannot be held responsible for the failure of the businesses they control to pay the salaries and benefits owed to Appellees, especially where they agreed to make the payments as part of the April 2024 agreement. Therefore, Appellants have not shown error. See *In re Waitz*, 255 Ga. App. at 842.

7. Appellants further argue in related enumerations that, with respect to their appeal in Case No. A25A0764, the trial court improperly commented on the appealability of its orders and exceeded its authority by requiring a $500,000 bond as

25

supersedeas where there was no monetary judgment in the underlying case. We find no reversible error.

Although the trial court surmised as to the appealability of certain orders when addressing Appellees' motion to clarify the appeal, the court correctly acknowledged that it did not have the authority to make any determinations as to the jurisdiction of this Court. Therefore, Appellants cannot show error on this basis.

In addition, our conclusion in Case No. A25A0764 moots Appellants' appeal as to the propriety of the trial court's order setting a supersedeas bond for their appeal. See *Ruskin v. AAF-McQuay, Inc.*, 284 Ga. App. 49, 53 (2007) (because we affirmed the main appeal, any appeal from the order to post supersedeas bond was moot). As such, there is nothing for us to review.

8. Finally, while not listed in their enumeration of errors, Appellants argue that the trial court violated USCR 6.2 by giving them less than 30 days to respond to Appellees' second motion for contempt and request for supersedeas. Appellants have not shown error.

Appellants first argue that the rule nisi was not signed by the trial court judge, and as a result, could not reduce their time to respond to Appellees' motion.

However, Appellants did not include the rule nisi in the record on appeal. See Court of Appeals Rule 25(d)(1)(i); *Colclough*, 367 Ga. App. at 570. And regardless of the rule nisi, the record shows that the trial court did not rule on the motion for contempt until after Appellants filed a response.

Furthermore, even if Appellants could show that the trial court did not give them adequate time to respond to the second motion for contempt, they have not claimed that giving them additional time would have led to the presentation of evidence that would have affected the substantive result. See *Cap. Floors, LLC v. Furman*, 351 Ga. App. 589, 593 (2019). In the absence of a showing "that additional time to respond would have changed the state of the record in any way," Appellants cannot show harm from the alleged error. Id. (punctuation omitted). Without a showing of harm, they have "failed to show that any alleged noncompliance with USCR 6.2 would justify reversal in this case." Id.

Finally, any issues concerning the supersedeas bond are moot for the reasons stated in Division 7.

*Judgments affirmed in part and vacated in part, and cases remanded with direction. Markle and Padgett, JJ., concur.*